P8LJZAZC

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

             v.                        23 Cr. 180 (KPF)

MARTIN ZAZUETA PEREZ AND KEVIN
GIL ACOSTA,

                                       Arraignment
             Defendants.

------------------------------x

                                       New York, N.Y.
                                       August 21, 2025
                                       10:00 a.m.


Before:

               HON. KATHERINE POLK FAILLA,

                                       District Judge

                       APPEARANCES

JAY CLAYTON
     Acting United States Attorney for the
     Southern District of New York
JANE CHONG
     Assistant United States Attorney

MARC FERNICH
     Attorney for Defendants
     -and-
RICHARD ROSENBERG

Also Present:

Nancy I. Adler, Interpreter (Spanish)
Juan Davila-Santiago, Interpreter (Spanish)


                   SOUTHERN DISTRICT REPORTERS, P.C.
                          (212) 805-0300

P8LJZAZC

(Case called)

MS. CHONG:  Good morning, your Honor.

AUSA Jane Chong for the government.

THE COURT:  Thank you.  Mr. Fernich, hello.

MR. FERNICH:  Good morning, Judge.

Marc Fernich for Mr. Perez.

MR. ROSENBERG:  Richard Rosenberg, your Honor.  I was representing Mr. Acosta at the presentment, and I'm here today at the Court's wishes for whatever you'll want me to have.

THE COURT:  Thank you so much.  All right.  Let me begin with some housekeeping matters, please, and I welcome all of you to the first appearance in this court.  Let me begin by speaking.  Tell me please, Mr. Zazueta Perez — and sir, by what surname do you prefer to be referred to as, Mr. Zazueta or Mr. Zazueta Perez?

DEFENDANT ZAZUETA PEREZ:  However you like.

THE COURT:  That's very nice of you.  I'll probably do both then.  All right.

And Mr. Gil Acosta is over here?  Thank you so much. How do you prefer to be named, Mr. Gil?  Mr. Gil?  All right. Thank you so much.

I say this to both of my defendants this morning. Good morning.  I'm Judge Failla, and I'm the judge to whom this case has been assigned.  You are receiving assistance at this time from a Spanish language interpreter.  If at any time you

P8LJZAZC

cannot hear or cannot understand what is being said, please let me know or please let your attorney know because the most important thing this morning is that each of you understands what is happening in this courtroom.

Mr. Zazueta, have you heard and understood everything I've said so far?

DEFENDANT ZAZUETA PEREZ:  Yes.

THE COURT:  Thank you.  And Mr. Gil, have you heard and understood everything that I've said so far?

DEFENDANT GIL ACOSTA:  Yes.

THE COURT:  Thank you so much.  We are here this morning for two things, and one is to have an arraignment on the indictment in this case, but the second — and perhaps I should do this in reverse order — is to talk about a potential conflict issue.  Before I do that, may I inquire of the marshals of one issue.  Is it necessary that both defendants be in the locations that they are?

THE MARSHAL:  Your Honor, there's a security separation of the prisoner, so we have to have enough distance between them.

THE COURT:  I see.  There's -- and I don't want to misstate the issue.  There's a separation order as between these two defendants?

THE MARSHAL:  Correct.

THE COURT:  That would make joint meetings with

P8LJZAZC

counsel somewhat complicated.  I understand that.  I appreciate knowing that, and at this time I'm not in a position to overturn or even disagree with what you're doing.  Thank you for letting me know.  All right.

So Mr. Fernich, let me talk to you for a moment, please, sir.  It is my understanding that you are proposing to represent of these gentlemen as retained counsel; is that correct?

MR. FERNICH:  Correct, Judge.

THE COURT:  All right.  And, sir, I don't want the specifics of your privileged communications because they are privileged, but have you had discussions with each defendant about the rights that he has with respect to his right to counsel?

MR. FERNICH:  Yes, prior to court this morning, Judge.

THE COURT:  And before that, sir?

MR. FERNICH:  No.

THE COURT:  You'll excuse me and you'll tell me what you can't tell me, sir.  Have you had communications with these defendants at the time of their initial presentment in this case?

MR. FERNICH:  Yes.  And I briefly outlined that subject at that time to them.

THE COURT:  Did these gentlemen each separately retain you, sir?

P8LJZAZC

MR. FERNICH:  Yes.

THE COURT:  And did they enter into retainer agreements with you?

MR. FERNICH:  That hasn't been done yet because they were brought here very abruptly.

THE COURT:  They're each going to be paying you separately for your services?

MR. FERNICH:  Yes.  Yes.

THE COURT:  I see.  All right.  So Mr. Fernich, given that, and given that there is the potential for conflict in this case, it would seem to me — that is, the government suggests, I ought to do a Curcio hearing as to each gentleman, and I would ask the same questions of them, but I'm going to ask them separately.  Is there any opposition to that, sir?

MR. FERNICH:  No opposition.

THE COURT:  And you've seen the proposed questions the government has asked me to ask.  Do you have any objection to any of those questions, sir?

MR. FERNICH:  I don't, Judge.

THE COURT:  Thank you.  Then let me please do that now.  And you're saying, Mr. Fernich, that each defendant will not be surprised that I will be asking these questions?

MR. FERNICH:  No.  I explained to them what was going to happen this morning.

THE COURT:  Okay.  And let me explain to Mr. Zazueta

P8LJZAZC

and to Mr. Gil.

MR. FERNICH:  Gil and --

THE COURT:  Yes.  And Mr. Zazueta.  That because each of you has a right to conflict-free counsel, I would be asking you a series of questions I'll ask, first of all, to make sure you understand what I'm talking about and then that you understand the rights that you have.  One of the questions I'll be asking you or one of the things I will be giving you is if you want an opportunity to consult with conflict-free counsel — and that's why we have Mr. Rosenberg in the room — if either of you wishes to do that.  But let me then -- again, I'm going to begin with Mr. Zazueta, who I believe is right in front of me and is acknowledging that he is.

And sirs, I'm going to ask you to stand up and raise your right hand.  My deputy is going to place you under oath. You're doing your best.  That's okay.

(Defendant Zazueta Perez sworn)

THE COURT:  Mr. Zazueta, I will say this to you, and Mr. Gil will hear me as I'm saying the significance of my placing you under oath this morning is so if you were to answer any of the questions that I'm about to ask you falsely, you could be prosecuted for a separate offense that is commonly known as perjury.  Do you understand that, Mr. Zazueta?

DEFENDANT ZAZUETA PEREZ:  Yes.

THE COURT:  And Mr. Gil, do you understand that as

P8LJZAZC

well?

DEFENDANT GIL ACOSTA:  Yes.

THE COURT:  Thank you.  Mr. Zazueta, what is your familiarity with the English language?

DEFENDANT ZAZUETA PEREZ:  Not.

THE COURT:  Okay.  You knew enough to say yes, but you don't have much of a vocabulary beyond, sir?

DEFENDANT ZAZUETA PEREZ:  No.

THE COURT:  I understand.  Thank you.  I want to be sure we all can hear you, sir.

How old are you, Mr. Zazueta?

DEFENDANT ZAZUETA PEREZ:  I'm 29.

THE COURT:  How far did you go in school, sir?

DEFENDANT ZAZUETA PEREZ:  First year of high school.

THE COURT:  Was that in Mexico, sir?

DEFENDANT ZAZUETA PEREZ:  Yes.

THE COURT:  And are you a national of Mexico, sir?

DEFENDANT ZAZUETA PEREZ:  Yes.

THE COURT:  Sir, are you consulting with a doctor now or have you very recently consulted with a doctor for any condition at all, any physical condition, any mental health condition?

DEFENDANT ZAZUETA PEREZ:  We had a checkup when we got here.

THE COURT:  And as a result of that checkup, were you

P8LJZAZC

prescribed any medication for any medical conditions?

DEFENDANT ZAZUETA PEREZ:  I was prescribed omeprazole for my stomach.

THE COURT:  Is that something that you are taking daily or periodically?

DEFENDANT ZAZUETA PEREZ:  It was given to me to take for 20 days, once a day.

THE COURT:  You've completed that -- you're still taking it, sir?

DEFENDANT ZAZUETA PEREZ:  No, I am still taking it.

THE COURT:  Thank you.  Does the omeprazole cause you any difficulty seeing, hearing or understanding me, sir?

DEFENDANT ZAZUETA PEREZ:  No.

THE COURT:  Are there any other medicines that you've been prescribed or that you're taking?

DEFENDANT ZAZUETA PEREZ:  No.

THE COURT:  In the last 24 hours, have you taken any other pills or any drugs or any alcohol?

DEFENDANT ZAZUETA PEREZ:  No.  No.

THE COURT:  Are you feeling well enough to proceed with today's hearing?

DEFENDANT ZAZUETA PEREZ:  Yes.

THE COURT:  Ms. Chong, do you have any doubt as to Mr. Zazueta's competence to proceed?

MS. CHONG:  No, your Honor.

P8LJZAZC

THE COURT:  Mr. Fernich, do you have any doubt as to Mr. Zazueta's competence to proceed?

MR. FERNICH:  No, Judge.

THE COURT:  Mr. Zazueta, please listen carefully to me.  Under the United States Constitution and the laws of this country, you are entitled to the aid and assistance of counsel at all times in these proceedings.  You are entitled to counsel of your own choice unless there is a strong legal reason for disqualifying that counsel.  And if you cannot afford an attorney, an attorney will be appointed to represent you without cost.

Do you understand that, sir?

DEFENDANT ZAZUETA PEREZ:  Okay.  Yes.  Yes.

THE COURT:  It is essential to the idea of an adequate defense in a criminal proceeding that your attorney has no conflicts or adverse interests of any kind — that is to say he cannot, unless it is with your knowledge and consent, have any conflicting interest in the case.  You have the right to the assistance of a lawyer whose loyalty to you is undivided and not subject to any factor that might intrude upon that loyalty. The purpose of this law is to ensure that you have the full devoted defense furnished to you by an attorney who has no other possible interest of any kind in this matter.

Do you understand that, sir?

DEFENDANT ZAZUETA PEREZ:  Yes.

P8LJZAZC

THE COURT:  Do you understand that the government is investigating and prosecuting criminal offenses committed by an entity known as the Chapitos and their associates including drug and weapons offenses?

DEFENDANT ZAZUETA PEREZ:  Yes.

THE COURT:  Do you understand that you and Kevin Gil Acosta have been charged in connection with that investigation and prosecution?

DEFENDANT ZAZUETA PEREZ:  Yes.

THE COURT:  Do I understand correctly that you have asked Mr. Fernich to represent you in connection with this investigation and prosecution?

DEFENDANT ZAZUETA PEREZ:  Yes.

THE COURT:  You also understand that Mr. Fernich seeks to represent Mr. Gil Acosta in connection with the same investigation and prosecution?

DEFENDANT ZAZUETA PEREZ:  Yes.

THE COURT:  Do you understand that in multi-defendant conspiracy cases like this case, it is common for defendants to become cooperating witnesses for the government and testify at trial against others?

DEFENDANT ZAZUETA PEREZ:  I understand.

THE COURT:  Do you understand that in a case involving multiple cooperating witnesses, a cooperating witness may attempt to argue that his assistance was more valuable than the

P8LJZAZC

assistance provided by another cooperating witness as part of an argument for a lesser sentence?

DEFENDANT ZAZUETA PEREZ:  Yes.

THE COURT:  Do you understand that in multi-defendant conspiracy cases such as this case, defendants may attempt to place blame on a co-defendant as part of an argument for a lesser sentence?

DEFENDANT ZAZUETA PEREZ:  Yes.

THE COURT:  Do you understand that in multi-defendant conspiracy cases such as this case, the government may ask for and collect information from a cooperating witnesses to be used against a co-defendant including another cooperating witnesses at sentencing?

DEFENDANT ZAZUETA PEREZ:  Yes, I understand.  Yes, I do.

THE COURT:  I just want to be sure, sir, that the interpreter has finished interpreting before you answer. That's the only thing I'm asking you to be careful of.  Thank you.

Do you understand that if he were to be appointed to represent you, Mr. Fernich would have a duty of loyalty to both you and Mr. Gil Acosta?

DEFENDANT ZAZUETA PEREZ:  I understand, yes.

THE COURT:  Do you understand that Mr. Fernich cannot use any information he obtained from Mr. Gil Acosta while

P8LJZAZC

representing you in this matter without his consent?

DEFENDANT ZAZUETA PEREZ:  Yes.

THE COURT:  Do you understand that Mr. Fernich is required by his duty of loyalty to protect the best interests of Mr. Gil Acosta as well as your best interests?

DEFENDANT ZAZUETA PEREZ:  Yes.

THE COURT:  Do you understand that if you were to be represented by Mr. Fernich, he cannot advise or help you in doing anything that would violate his ongoing obligations to Mr. Gil Acosta without his consent even if it is in your best interests to do so?

DEFENDANT ZAZUETA PEREZ:  Yes.

THE COURT:  Do you understand that if you were to be represented by Mr. Fernich there is a risk that he may advise or help Mr. Gil Acosta in doing something that would violate his ongoing obligations to you?

DEFENDANT ZAZUETA PEREZ:  Yes.

THE COURT:  Do you understand that if you were to be represented by Mr. Fernich, he cannot make arguments at sentencing that suggest Mr. Gil Acosta and not you is the more culpable party without Mr. Gil Acosta's consent?

DEFENDANT ZAZUETA PEREZ:  Yes.

THE COURT:  Do you understand that if you were to be represented by Mr. Fernich there is a risk that he may make arguments at sentencing that suggest that you and not Mr. Gil

P8LJZAZC

Acosta is the more culpable party?

DEFENDANT ZAZUETA PEREZ:  Yes.

THE COURT:  Do you understand that if you were to be represented by Mr. Fernich, he cannot make arguments at sentencing that suggest you are deserving of more leniency than Mr. Gil Acosta without Mr. Gil Acosta's consent?

DEFENDANT ZAZUETA PEREZ:  Yes.

THE COURT:  Do you understand that if you were to be represented by Mr. Fernich there is a risk that he may make arguments at sentencing that suggest that Mr. Gil Acosta is more deserving of leniency than you?

DEFENDANT ZAZUETA PEREZ:  Yes.

THE COURT:  Do you understand that if you cooperate, Mr. Fernich cannot help you in providing assistance to the government that might hurt Mr. Gil Acosta even if it turns out that doing so might be in your best interest?

DEFENDANT ZAZUETA PEREZ:  Yes.

THE COURT:  Do you understand that if Mr. Gil Acosta cooperates, there is a risk that Mr. Fernich may help Mr. Gil Acosta in providing assistance to the government that might hurt you?

DEFENDANT ZAZUETA PEREZ:  Yes.

THE COURT:  Do you understand that even if Mr. Gil Acosta waives or partially waives any duty of loyalty that Mr. Fernich owes to him, that Mr. Fernich's representation of

P8LJZAZC

Mr. Gil Acosta may nevertheless make Mr. Fernich less likely to make arguments and decisions in this case that could hurt Mr. Gil Acosta, even if those arguments or decisions would be in your best interest?

DEFENDANT ZAZUETA PEREZ:  Yes.

THE COURT:  So that the Court may be sure that you fully understand these issues, could you please describe to me in your own words your understanding of the potential problems created by Mr. Fernich's role as your attorney in this case and his representation of Mr. Gil Acosta in this case.

DEFENDANT ZAZUETA PEREZ:  Yes, I understood everything you said to me.  Yes.

THE COURT:  Okay.  And that's fine.  But to be sure that you do, sir, I need you to summarize for me what you understand the potential conflict to be if Mr. Fernich were to represent both you and Mr. Gil Acosta.

DEFENDANT ZAZUETA PEREZ:  Yes, I understand that it could be a problem if he represents both of us, yes.

THE COURT:  What is the problem, sir?  I need you to describe for me what the problem is.

DEFENDANT ZAZUETA PEREZ:  Well, the interests you spoke about that would be mine versus his.

THE COURT:  Once again, sir, I can't spoonfeed you this information.  I do need you to explain to me what the conflict is.

P8LJZAZC

DEFENDANT ZAZUETA PEREZ:  Excuse me.  Again?

THE COURT:  We're here today because there's a potential for a conflict that Mr. Fernich has if he represents both you and Mr. Gil Acosta.  Do you agree with me on that point?

DEFENDANT ZAZUETA PEREZ:  Yes.

THE COURT:  Tell me what is the conflict?  What is the potential conflict?

DEFENDANT ZAZUETA PEREZ:  Well, it's what you said. If one of us says something, he's not going to tell me.

THE COURT:  I think what you're saying is that his duties to Mr. Gil Acosta may impact the representation that he gives to you or potentially impact, that is.  Is that what you're saying?

DEFENDANT ZAZUETA PEREZ:  No.  It's about the questions you just asked me, those questions.

THE COURT:  Sir, I understand that, but the point is in this setting it is not enough for you to just answer "yes, I understand" to my questions.  In order to confirm that you understand the conflict, you have to summarize what I was saying in the questions.  Mr. Fernich?

MR. FERNICH:  Judge, if I could speak to him with Mr. Rosenberg for a second.

THE COURT:  You may.

MR. FERNICH:  Can Ms. Adler help us with this?

P8LJZAZC

THE COURT:  Of course.

(Counsel and defendant conferred)

THE COURT:  Mr. Fernich, what is your pleasure?
Should I ask the question again?

MR. FERNICH:  Yes.

THE COURT:  Thank you.  Mr. Zazueta, let me be clear
in what I'm asking.  I know I have asked you a series of
questions about your understanding and you have answered yes to
those questions.  But I want to be sure that you're not just
saying yes to every question I ask you, so I'm asking you to
describe for me what you understand to be the conflict, the
potential conflict if Mr. Fernich were to represent you and to
represent Mr. Gil Acosta in this matter.

Do you understand my question?

DEFENDANT ZAZUETA PEREZ:  Yes.

THE COURT:  Okay.  Please summarize for me what the
conflict is.  Thank you, sir.

DEFENDANT ZAZUETA PEREZ:  So the conflict is that if
he helps me and may not be able to help him or vice versa, that
would be a problem.

THE COURT:  Anything else, sir, that you understand to
be the conflict?

DEFENDANT ZAZUETA PEREZ:  Well, if he would help him
and not me, it may happen.  That may cause a problem, but I
don't have a problem with that.

P8LJZAZC

THE COURT:  Ms. Chong, from the government's perspective, is his summary adequate?

MS. CHONG:  Your Honor, it's still not quite clear to the government what he means when he says there could be a problem.  So if there could be a further inquiry as to what he means when he says Mr. Fernich might help the other defendant and it could be a problem, that might be helpful here.

THE COURT:  Thank you.  So Mr. Zazueta, you've just said if Mr. Fernich helps you, it could be a problem for Mr. Gil Acosta.  If he helps you, Mr. Gil Acosta, it could be a problem for you.  What do you mean by -- what's the problem, sir?

DEFENDANT ZAZUETA PEREZ:  The problem would be if he helps the other person and he was not helping me.  But the problem is also I've never been in this kind of a case, so --

THE COURT:  I'm not doubting that, sir.  Mr. Fernich, I'm not sure that that -- I don't feel any more confident with you having had a chance to speak to Mr. Zazueta.  Would you wish to speak to him again?

MR. FERNICH:  Yes, I'll speak to him again.

THE COURT:  And I'm saying this both to him and to Mr. Gil Acosta, who I will question at some later point, it's not enough to say "yes, I understand" to each of my questions.  You need to tell me what the issues are.  So I'll let you take the time to speak to Mr. Zazueta, and Mr. Gil will understand

P8LJZAZC

that at a later time I'll ask him the same questions.  Thank you.

(Counsel and defendant conferred)

THE COURT:  Mr. Fernich, what would you like me to know?

MR. FERNICH:  I'd like to try to continue the inquiry, Judge.

THE COURT:  Thank you.

DEFENDANT ZAZUETA PEREZ:  What I wanted to say is that say he has better results for one, for the other, it wouldn't be good because he has to defend both of us together.

MR. FERNICH:  Try it one more time.  Judge, I'm sorry.

THE COURT:  That's fine.  I'm wondering if this is something that can be done today.

MR. FERNICH:  I know that the Court has another commitment.

THE COURT:  We're trying to move that, sir.

MR. FERNICH:  Oh, I apologize for that.

THE COURT:  We will not be -- I won't be able to do my conference --

MR. FERNICH:  Maybe the difficulties that I've had getting communications with them in the week between his first appearance and today, if I can speak to them now, if the Court has more time I can explain it in more detail.  I think the word "result" is a problem, and I'm not getting past that.

P8LJZAZC

THE COURT:  Okay.  The issue is I've lost my 11:00, and I'm willing to do it, but number one, I shouldn't have to. Number two, Ms. Chong is here wasting her time as well.  So we both -- I suspect Ms. Chong and I both want this to go forward successfully.

MR. FERNICH:  I do too.

THE COURT:  I'll step off the bench and give you that time.  Let me confirm it works with her schedule as well.

MS. CHONG:  Yes, your Honor.

THE COURT:  I'll step off the bench and you'll tell me when to get back on.

(Recess)

THE COURT:  Mr. Fernich, what would you like me to know?

MR. FERNICH:  First of all, I apologize for messing up the Court's schedule.  This is exactly what I tried to avoid. It's very difficult with the language barrier.  I have no --

THE COURT:  One moment, please.  I'm missing a prosecutor.  Thank you.  When you told me you were ready, I understood that meant that everyone was in the courtroom.

MR. ROSENBERG:  Sorry.

MR. FERNICH:  Sorry, Jane.

THE COURT:  Mr. Fernich, I'll hear from you now.

MR. FERNICH:  Judge, to repeat what I said before Ms. Chong was here, I'm so sorry for screwing up everybody's

P8LJZAZC

calendar.  That is the opposite of what I wanted to happen. I'm convinced that they understand this, but they're having problems articulating it.  There's a language barrier and they're very nervous and stressed.  It's a completely foreign situation for them.  I'm comfortable with the Court taking up where it left off.  I'm hopeful they'll be able to articulate their thoughts in a way that will assuage everybody's concerns and satisfy the Curcio mandates.

THE COURT:  Thank you.  Mr. Zazueta Perez, I'm going to begin with you, sir.  As we've talked about before the break, what I need to know is that you are aware of the potential conflicts, the potential risks in this case caused or that could possibly be caused if Mr. Fernich were to represent you and Mr. Gil Acosta.

You understand that, sir, yes?

DEFENDANT ZAZUETA PEREZ:  Yes, I understand.

THE COURT:  And so the way that I can ensure that you fully understand the conflicts is for you to repeat back to me, to summarize what you understand the conflicts to be.  So let me please ask you, sir, what do you understand the potential conflicts to be if Mr. Fernich were to represent both you and Mr. Gil Acosta in this matter?

DEFENDANT ZAZUETA PEREZ:  Yes, if each of us took a different path, then if there were conflict between the two of us, who are defended by the lawyer, then we would have to take

P8LJZAZC

a different defense if our interests took a different path each.

THE COURT:  What else?

DEFENDANT ZAZUETA PEREZ:  We would have to change attorneys because he cannot defend two people who have different interests.

THE COURT:  Ms. Chong, is that acceptable to the government?

MS. CHONG:  Your Honor, I think the explanation is somewhat confusing, as it might be helpful here to understand what the defendant means when he says if each defendant took a different path, we would have to take a different defense.

THE COURT:  Okay.  Mr. Zazueta Perez --

MR. FERNICH:  Just to see if I could clarify the record without violating privilege, I've told them that it's impossible at this time to predict how the case will unfold and the myriad of different options that could open up.  And the clients have made clear to me that they understand that it's entirely unpredictable, but if their legal paths diverge it would be impossible for me to represent both of them at the same time because I couldn't do an adequate job for either one of them.  And I've told them repeatedly that I would step away from both defendants in this situation and that each would get an independent lawyer who could adequately represent their conflicting interests if that were to ensue.

P8LJZAZC

Both are insistent that at this time there is no conflict, their interests are aligned.  I've told them repeatedly that I agree and understand that, but nobody can predict how criminal cases unfold.  And it happens in cases that people who were united now separate in the future and that I'm keenly aware of my ethical obligations and would never ever do anything to hurt either one of them and that I would recognize right away and step away immediately if one were in any way pitted against the other.  And I would never put myself in a compromised ethical situation where I couldn't help each one of them to my best abilities.  I would never do that.

THE COURT:  Mr. Fernich, I think the key to what you've said a moment ago was that you believe that the answer that Mr. Zazueta Perez is giving me is a product of that particular advice that you gave him?

MR. FERNICH:  I believe that what he just said, the last sentence mirrors precisely what I've attempted to tell him in many different ways.  And there's a significant language barrier.  And one of the clients in particular is, although thoroughly competent to waive any conflict today, he's just nervous, Judge.  And I believe the last sentence that Mr. Perez uttered captured it as well as I could say it.  And I think the sentence was -- if the reporter wants to read back the final sentence, I'm confident now that he got where the Court wanted to go with the last sentence.  I don't believe -- I appreciate

Ms. Chong's concern about the first sentence.  I think that's -- he doesn't mean defense.  He means that if their defenses are -- if their interests are not aligned, there would need to be a new lawyer, not new defenses.

THE COURT:  I think the concern, sir — and it's maybe Ms. Chong's concern, but it is in fact my concern — is that your client has talked about the sort of worst case scenario, which is where you find yourselves on different paths, each defendant has chosen a different defense that is no conflict.  And let me just note as this conversation has been going on, that I've intermittently watched each defendant nod his head to reflect comprehension of what we're all talking about.

The issue is short of that worst case scenario, there are a lot of other problems that can arise — and that's what I'd like to discuss with Mr. Zazueta Perez — which include the fact that he might not even know that there are things that you can't do because of your representation of Mr. Gil Acosta and that there are, again, even short of the complete divergence, some defenses that, for example, your duty of confidentiality to Mr. Gil Acosta would impede your ability to assist him in certain things.  So it's not just the diverging paths.  It's even if the paths are aligned, there are still limits on certain things that you can do.  Do you agree with me on that point, sir?

MR. FERNICH:  I do.  But I've assured both defendants

P8LJZAZC

that I'm sensitive to those issues, and I would not put myself in a situation where I could not robustly represent both defendants, and I would excuse myself if that came to be the case.

THE COURT:  And I have no reason at this stage to doubt what you're saying, sir.  But the concern is the standard is not do I trust the attorney to do the right thing and step away when things get ethically compromised.  For me, the issue is can I be confident that each defendant understands what the risks are?  And that's what we've been trying to do for going on 40 minutes, sir.

MR. FERNICH:  I don't believe they're going to be able to articulate it to that degree.  I'm confident that they will understand it, but I don't believe that they will be able to articulate in the manner that your Honor desires that they understand that, but I'm confident that they will understand that and they do understand that.  And if I can put it also in my own words right now through the interpreter on the record.

THE COURT:  No, I don't think that's what we're supposed to do here.  The point is I need to know that Mr. Zazueta Perez understands the issues.

And so Mr. Zazueta Perez, let me talk to you, please, sir.  You talked to me about the situation in which you and Mr. Gil Acosta are on, as you put it, "different paths."  And by that I'm understanding that what you mean is if you choose a

P8LJZAZC

defense that is in opposition to or antagonistic to Mr. Gil Acosta's where you two are in conflict, what's what you're talking about with the different paths, sir, correct?

DEFENDANT ZAZUETA PEREZ:  Yes.

THE COURT:  And what you're saying to me is you understand that if your path, your defense, comes into conflict with Mr. Gil Acosta's defense, you're each going to be in a position of having to get new attorneys, yes, sir?

DEFENDANT ZAZUETA PEREZ:  Yes.

THE COURT:  But that to me, as you just heard me say, that was a worst case scenario.  You also understand I hope, based on our communications earlier today, that Mr. Fernich's duties of loyalty to Mr. Gil Acosta may prevent him from sharing certain information with you in the course of his representation of you.

Do you understand that?

DEFENDANT ZAZUETA PEREZ:  Yes, I understand.  Yes, I do.

THE COURT:  And so you might be deprived of that helpful information or you might be deprived of helpful advice if that helpful advice hurts Mr. Gil Acosta.

Do you understand that?

DEFENDANT ZAZUETA PEREZ:  Yes, I understand.

THE COURT:  All right.  And that's also part of the potential conflicts in this case, sir, yes?

P8LJZAZC

DEFENDANT ZAZUETA PEREZ:  Yes.

THE COURT:  Ms. Chong, given the discussions I've had with Mr. Zazueta Perez and with Mr. Fernich and then again with Mr. Zazueta Perez, I do think that he understands the spectrum of potential conflicts that can arise.  If you disagree, I'll hear from you now.  Some of it was said to me in narrative form and some of it has been teased out based on my communications with him after discussions with Mr. Fernich.  But if there are additional followup questions you'd like me to ask, I will do so now.

MS. CHONG:  Thank you, your Honor.

I think the only question the government would like asked is whether the defendant understands that Mr. Fernich would have a duty of loyalty to him and to Mr. Gil Acosta, and that there is a risk that he himself might not know when the two defendants' interests diverge.

THE COURT:  All right.  Mr. Zazueta Perez, the prosecutor is correct.  We've talked about the fact that if Mr. Fernich would represent both you and Mr. Gil Acosta, he would have a duty of loyalty to each of you.

You understand that, sir?

DEFENDANT ZAZUETA PEREZ:  Yes, I understand.

THE COURT:  And he would, as he's told us this morning, work very hard to ensure that those duties don't come into conflict.  You've heard that, yes?

P8LJZAZC

DEFENDANT ZAZUETA PEREZ:  Yes.

THE COURT:  And he's also said to us that if he perceives that they're coming into conflict, he's going to let you know and he's going to drop both of you as clients and have each of you get new counsel.  Did you hear that as well?

DEFENDANT ZAZUETA PEREZ:  Yes.

THE COURT:  The issue, sir, I want you to understand that you might not realize when those duties of loyalty are coming into conflict.  Do you understand that, that one of the issues if you are represented by the same attorney, is that you and Mr. Gil Acosta might have situations where those duties are coming into conflict and you might not even realize it?

Do you understand that?

DEFENDANT ZAZUETA PEREZ:  Yes, I understand.

THE COURT:  All right.  And therefore, you're relying on Mr. Fernich to tell you that they've come into conflict to the point where he cannot professionally represent both of you?

DEFENDANT ZAZUETA PEREZ:  Yes.

THE COURT:  Ms. Chong?

MS. CHONG:  Your Honor, no further questions from the government.

THE COURT:  Thank you.  All right.  I'm going to change topics now.  I think you know this already, sir, and you've actually been making use of Mr. Rosenberg, but do you understand that you have a right to consult with a lawyer other

P8LJZAZC

than Mr. Fernich in order to determine whether you wish to have Mr. Fernich represent you in this case?

DEFENDANT ZAZUETA PEREZ:  Yes, I understand.

THE COURT:  Do you also understand that if you cannot afford another attorney, the Court will appoint counsel to consult with you regarding these conflict of interest matters without charging you for that, without cost to you.  That attorney is Mr. Rosenberg.  He's not connected to Mr. Fernich. He's not connected to the government.  Anything that you were to tell him separately, privately would be privileged.  It would be private as between you and he, and Mr. Rosenberg would not be able to tell Mr. Fernich or me or the government about what you said to him.

Do you understand that?

DEFENDANT ZAZUETA PEREZ:  Yes, I understand.

THE COURT:  Mr. Zazueta Perez, if you want to take a break today and to have more time to speak with another attorney about this matter, I will adjourn this proceeding.  Do you want the opportunity to have a consultation with another attorney or do you wish to go forward today?

DEFENDANT ZAZUETA PEREZ:  I wish to go forward.  I don't have a problem.

THE COURT:  Do you understand that in every criminal case including this one, a defendant is entitled to the assistance of counsel whose loyalty to him is undivided and who

P8LJZAZC

is not subject to any force or consideration that might in any way intrude upon the attorney's loyalty to his client's interests?

DEFENDANT ZAZUETA PEREZ:  Yes, I understand.

THE COURT:  Sir, today we've taken several breaks, and I understand that you've spoken with counsel, Mr. Fernich, prior to this proceeding.  I don't want to know the specifics of your communications, but I do want to confirm that you have had a sufficient opportunity to speak with Mr. Fernich about the conflict of interest issues that arise if he were to also represent Mr. Gil Acosta.

DEFENDANT ZAZUETA PEREZ:  Yes, I had a conversation with both.  I understood, and they gave me a good explanation.

THE COURT:  And therefore you've had an opportunity to speak with another attorney about the conflict of interest issues that might arise if Mr. Fernich were also to represent Mr. Gil Acosta?

DEFENDANT ZAZUETA PEREZ:  Yes.

THE COURT:  You heard Mr. Fernich say this a moment ago, and I'm going to repeat it.  You need to understand that no one can predict with any certainty the course that this case will take or how the restrictions on Mr. Fernich's abilities to represent you will affect you.  Do you know that?  Do you understand that, sir?

DEFENDANT ZAZUETA PEREZ:  Yes, I understand it.

P8LJZAZC

THE COURT:  And the restrictions on Mr. Fernich's ability to represent you may adversely impact his representation of you in matters that we haven't yet discussed — for example, the restrictions on Mr. Fernich could affect the way that Mr. Fernich considers whether you should cooperate with the government, whether you should waive indictment, whether you should plead guilty, what motions to file on your behalf, what arguments to make on your behalf to the Court, and what arguments to make and what facts to bring to the Court's attention at your sentencing.

Do you understand the examples I've just given you, sir?

DEFENDANT ZAZUETA PEREZ:  Yes, I understand those clearly.

THE COURT:  Do any of those examples cause you any concern?

DEFENDANT ZAZUETA PEREZ:  No.

THE COURT:  Why not?

DEFENDANT ZAZUETA PEREZ:  Because I trust my attorney. And if anything comes up, I would run that by a different attorney, like you said, as far as the case goes.

THE COURT:  Are you aware, sir, that if you are convicted in this case you will not be able to appeal on any of the issues that I've discussed with you today if you waive the potential problems associated with Mr. Fernich's restrictions

P8LJZAZC

on his representation of you and elect to retain Mr. Fernich as your attorney in this case?

DEFENDANT ZAZUETA PEREZ:  Yes.

THE COURT:  Do you understand that an appellate court would take into account your consent to his representation of you and hold that you have given up your right to complain of any problems associated with Mr. Fernich's restrictions on his representation of you?

DEFENDANT ZAZUETA PEREZ:  Yes, I understand that.

THE COURT:  And do you understand that if you proceed with Mr. Fernich as your attorney, you will not be able to claim later on that you were prejudiced in any way because of his restrictions on his representation of you?

DEFENDANT ZAZUETA PEREZ:  Yes.

THE COURT:  And having considered the ways in which Mr. Fernich's restrictions on his representation of you may affect his representation of you, do you still wish to proceed in this case with Mr. Fernich as your attorney?

DEFENDANT ZAZUETA PEREZ:  Yes.

THE COURT:  I'm going to ask that question a little bit differently, sir.  Having considered the ways in which Mr. Fernich's representation of Mr. Gil Acosta may affect his representation of you, do you consent to Mr. Fernich representing Mr. Gil Acosta in this matter?

DEFENDANT ZAZUETA PEREZ:  Yes, I consent.

P8LJZAZC

THE COURT:  Have you received any inducement or any promise that I'm not aware of that may have influenced your decisions on these issues?

DEFENDANT ZAZUETA PEREZ:  No, I really have not.

THE COURT:  Is your waiver of your right to conflict-free representation voluntary?

DEFENDANT ZAZUETA PEREZ:  Yes, it is voluntary.

THE COURT:  Have you been forced or threatened in any way to make these decisions on these issues today?

DEFENDANT ZAZUETA PEREZ:  No, not at all.  No.

THE COURT:  Is there anything that I've said to you this morning that you wish me to explain further?

DEFENDANT ZAZUETA PEREZ:  No, no.  It's all clear. It's all fine.

THE COURT:  Ms. Chong, are there any additional followup questions you'd like me to ask of Mr. Zazueta Perez?

MS. CHONG:  No, your Honor.

THE COURT:  All right.  I'll ask the same question of you, Mr. Fernich.  I don't think there are additional questions you would like me to ask, but I'm happy to ask them.

MR. FERNICH:  No, ma'am.

THE COURT:  Based on my conversations with Mr. Zazueta Perez, based on his answers to my questions, based on his demeanor in court, based on the number of breaks that we've had this morning to ensure that he knows his rights, I find that he

P8LJZAZC

is knowingly, voluntarily waiving his right to conflict-free counsel.  And depending on what happens with Mr. Gil Acosta, I will allow the joint representation or the dual representation.

So Mr. Gil Acosta, it is your turn, sir, and I do appreciate your patience this morning.  Mr. Fernich, can I ask you to go up and sit next to him?

MR. FERNICH:  I think that would help, yes.

THE COURT:  Thank you.  Ms. Noriega, can I ask you please to swear in Mr. Gil Acosta.

(Defendant Gil Acosta sworn)

THE COURT:  Are you able to spell your name, sir?

THE DEFENDANT:  Yes, in Spanish.

THE COURT:  Go for it.

DEFENDANT GIL ACOSTA:  Kevin Alonso Gil Acosta.

THE COURT:  Thank you very much.  Please be seated, sir.

Excuse me for mispronouncing your name earlier.  I know it better now.  Mr. Gil, how old are you?

DEFENDANT GIL ACOSTA:  35.

THE COURT:  How far did you go in school, sir?

DEFENDANT GIL ACOSTA:  I finished high school.

THE COURT:  Was that in Mexico, sir?

DEFENDANT GIL ACOSTA:  Yes.

THE COURT:  And are you a Mexican national, sir?

DEFENDANT GIL ACOSTA:  Yes.

P8LJZAZC

THE COURT:  Are you presently being treated by a doctor for any condition, medical or mental health?

DEFENDANT GIL ACOSTA:  No, no.

THE COURT:  Have you been prescribed any medications?

DEFENDANT GIL ACOSTA:  No, no.

THE COURT:  In the last 24 hours, have you taken any drugs or pills or alcohol of any kind?

DEFENDANT GIL ACOSTA:  Ibuprofen.

THE COURT:  And is there anything about that ibuprofen that makes it difficult for you to see or hear or understand what I'm saying this morning?

DEFENDANT GIL ACOSTA:  No, I feel fine.

THE COURT:  And are you feeling well enough to proceed with this hearing?

DEFENDANT GIL ACOSTA:  Yes.

THE COURT:  Ms. Chong, any doubts about the competence of Mr. Gil?

MS. CHONG:  No, your Honor.

THE COURT:  Mr. Fernich, any doubts?

MR. FERNICH:  No, ma'am.

THE COURT:  Thank you.  Mr. Gil, I find that you are competent to proceed with this matter.  So let me ask you the same questions that I asked of Mr. Zazueta Perez.

Sir, do you understand that under the United States Constitution and the laws of this country, you are entitled to

P8LJZAZC

the aid and assistance of counsel at all times in these proceedings? You are entitled to counsel of your own choice unless there is a strong legal reason for disqualifying that counsel. And if you cannot afford an attorney, an attorney would be appointed to represent you without cost to you.

Are you aware of each of those things, sir?

DEFENDANT GIL ACOSTA: Yes, I understand that and I am aware of it.

THE COURT: It is essential to the idea of an adequate defense in a criminal proceeding that your attorney has no conflicts or adverse interests of any kind — that is to say he cannot, unless it is with your knowledge and consent, have any conflicting interest in the case. You have the right to the assistance of an attorney whose loyalty to you is undivided and not subject to any factor that might intrude upon that loyalty. The purpose of this law it to ensure that you have the full devoted defense furnished to you by an attorney who has no other possible interest of any kind in this matter.

Do you understand that, sir?

DEFENDANT GIL ACOSTA: Yes, I understand that.

THE COURT: Do you understand that the government is investigating and prosecuting criminal offenses committed by an entity known as the Chapitos and their associates, and these offenses include drug and weapons offenses?

DEFENDANT GIL ACOSTA: I understand that.

P8LJZAZC

THE COURT:  Do you understand that you and Mr. Zazueta Perez have been charged in connection with that investigation and prosecution?

DEFENDANT GIL ACOSTA:  Yes, I understand.

THE COURT:  And have you asked Mr. Fernich to represent you in connection with the investigation and prosecution?

DEFENDANT GIL ACOSTA:  Yes.

THE COURT:  And do you understand that Mr. Fernich also seeks to represent Mr. Zazueta in connection with that investigation and prosecution?

DEFENDANT GIL ACOSTA:  Yes, I understand that.

THE COURT:  Do you understand, sir, that in multi-defendant conspiracy cases like this case, it is common for defendants to become cooperating witnesses for the government and to testify at trial against others?

DEFENDANT GIL ACOSTA:  Yes, I understand that.

THE COURT:  And do you understand that in a case involving multiple cooperating witnesses, a cooperating witness may attempt to argue that his assistance was more valuable than the assistance provided by another cooperating witness as part of an argument for a lesser or lower sentence?

DEFENDANT GIL ACOSTA:  Yes, I also understand that.

THE COURT:  Do you understand that in multi-defendant conspiracy cases such as this case, defendants may attempt to

P8LJZAZC

place blame on a co-defendant as part of an argument for a lesser sentence?

DEFENDANT GIL ACOSTA:  Yes, I understand that.

THE COURT:  Do you understand that in multi-defendant conspiracy cases such as this one the government may ask for and collect information from a cooperating witness to be used against a co-defendant including another cooperating witness at sentencing?

DEFENDANT GIL ACOSTA:  Okay.  Yes, I understand that.

THE COURT:  Do you understand that Mr. Fernich has a duty of loyalty to both you and Mr. Zazueta Perez?

DEFENDANT GIL ACOSTA:  Yes, I understand that.

THE COURT:  Do you understand that Mr. Fernich cannot use any information he obtained from Mr. Zazueta Perez while representing you in this matter without his consent, Mr. Zazueta Perez's consent?

DEFENDANT GIL ACOSTA:  Yes, I understand that.

THE COURT:  Do you understand that Mr. Fernich is required by his duty of loyalty to protect the best interests of Mr. Zazueta Perez as well as your best interests?

DEFENDANT GIL ACOSTA:  Yes, I understand that.

THE COURT:  Do you understand that if you were to be represented by Mr. Fernich, he cannot advise or help you in doing anything that would violate his ongoing obligations to Mr. Zazueta Perez without Mr. Zazueta Perez's consent even if

P8LJZAZC

it is in your best interest to do so?

DEFENDANT GIL ACOSTA:  Yes, I understand that.

THE COURT:  Do you understand that if you were to be represented by Mr. Fernich, there is a risk that he may advise or help Mr. Zazueta Perez in doing something that would violate his ongoing obligations to you?

DEFENDANT GIL ACOSTA:  Yes, I understand that.

THE COURT:  Do you understand that if you were to be represented by Mr. Fernich, he cannot make arguments at sentencing that suggest that Mr. Zazueta Perez, and not you, is the more culpable party without Mr. Zazueta Perez's consent?

DEFENDANT GIL ACOSTA:  Yes, I understand that.

THE COURT:  Do you understand that if you were to be represented by Mr. Fernich, there is a risk that he may make arguments at sentencing that suggest that you and not Mr. Zazueta Perez is the more culpable party in this case?

DEFENDANT GIL ACOSTA:  Yes, I understand that.

THE COURT:  Do you understand that if you were to be represented by Mr. Fernich, he cannot make arguments at sentencing that suggest that you are deserving of more leniency than Mr. Zazueta Perez without Mr. Zazueta Perez's consent?

DEFENDANT GIL ACOSTA:  I understand that.

THE COURT:  Do you understand that if you were to be represented by Mr. Fernich, there is a risk that he may make arguments at sentencing that suggest that Mr. Zazueta Perez is

P8LJZAZC

more deserving of leniency than you?

DEFENDANT GIL ACOSTA:  I understand.

THE COURT:  Do you understand that if you cooperate, Mr. Fernich cannot help you in providing assistance to the government that might hurt Mr. Zazueta Perez, even if it turns out that doing so might be in your best interest?

DEFENDANT GIL ACOSTA:  Yes, I understand that.

THE COURT:  And do you understand that if Mr. Zazueta Perez cooperates, there is a risk that Mr. Fernich might help Mr. Zazueta Perez in providing assistance to the government that might hurt you?

DEFENDANT GIL ACOSTA:  I understand that.

THE COURT:  Do you understand that even if Mr. Zazueta Perez waives or partially waives any duty of loyalty that Mr. Fernich owes to him, that Mr. Fernich's representation of Mr. Zazueta Perez may nevertheless make Mr. Fernich less likely to make arguments and decisions in the case that could hurt Mr. Zazueta Perez, even if those arguments and decisions would be in your best interest?

DEFENDANT GIL ACOSTA:  Yes, I understand.

THE COURT:  Now, sir, we had a break earlier, and I've had extensive discussions with Mr. Zazueta Perez about this that I know you've heard, so I'll try and be brief.  I need to know that you understand the potential conflicts that could arise.  You've just answered "yes" and "I understand" to

P8LJZAZC

several questions I've asked you about those conflicts.  But to be sure that I can be confident that you know what you're doing, I would like for you to summarize in your own words what you understand the potential conflicts to be if Mr. Fernich were to represent both you and Mr. Zazueta Perez.  Would you be able to do that, sir?

DEFENDANT GIL ACOSTA:  Yes.

THE COURT:  Please do so.

DEFENDANT GIL ACOSTA:  I don't see any conflict for the time being.  And I am aware of all the questions I was asked to which I replied that yes, I am aware.  And there's no -- there's no problem with him representing both of us.

THE COURT:  So right now, you say today you don't see a conflict at this moment.  Remember you just said that to me?  Do you remember that?

DEFENDANT GIL ACOSTA:  Yes.

THE COURT:  You might be right, but what I need to know is what do you understand the potential conflicts to be?

DEFENDANT GIL ACOSTA:  In case he has an agreement with the government, at that point, I -- well, the attorney -- the attorney would not be able to defend me, both him and me while those interests are clashing.  I am aware of everything I have been told, but saying the words is difficult for me.  So that now my attorney -- how could I put it?

THE COURT:  Let's take a moment, sir.  Do you want to

P8LJZAZC

speak with Mr. Fernich?  No?  Or not?

MR. FERNICH:  He's a little nervous today.  I'm confident that he's got the essence of the clashing interests, which have been explained to him.

THE COURT:  Yet I need to hear it.  Yes.

MR. FERNICH:  So I would suggest that there's no conflict now, but it's not possible to predict what can happen in the future.  And you have to be able to understand that in the event that you two take different legal paths — and there are many ways that representing the two of you together could hamstring -- hurt my representation of both of you, subtle and overt, and that potentially could compromise my representation of you.  But I've assured you that I would not put myself in such a situation, and in the event your legal interests materially diverge, I will get out of the case and not represent either of you.  You understand that you can't predict today what will happen in the future; is that correct?

DEFENDANT GIL ACOSTA:  Correct.  I understand that very well.

MR. FERNICH:  So tell the judge in your own words in one sentence or two what the essence of it is that if your interests diverge there's a chance that I won't do a good job for either of you and I'm not allowed to represent either of you in that situation.

DEFENDANT GIL ACOSTA:  Yes, I understand that, and I

P8LJZAZC

will explain it to her just like you told me, briefly so.

If our interests clashed, he would not be able to represent us, so then I do, I do elect him as my attorney.

THE COURT:  Sir, a few followup questions, please, unless you're not finished.  Was there something else you wanted to say before I asked followup questions?

DEFENDANT GIL ACOSTA:  No, it's all good.

THE COURT:  Sir, you began your answer to me by saying you do not see a conflict at this moment.  Do you remember saying that to me?

DEFENDANT GIL ACOSTA:  Yes.

THE COURT:  But do you understand that part of the issue here is that you might not, because you're not an attorney, because you don't know what's happening with Mr. Zazueta Perez's case, you might not see a conflict when it arises?  Do you understand that?

DEFENDANT GIL ACOSTA:  Yes.

THE COURT:  And so you're in part -- you're basically relying on Mr. Fernich to let you know when you've reached the level of conflict when there's been a conflict that's going to impede his representation of you; is that correct?

DEFENDANT GIL ACOSTA:  Yes.

THE COURT:  And now you've also talked about the situation where your interests clash and you say that there can be circumstances where your defense is one thing, Mr. Zazueta

P8LJZAZC

Perez's defense is another, and Mr. Fernich can represent neither of you. Do you understand that?

DEFENDANT GIL ACOSTA: Yes.

THE COURT: I referred to that earlier as a worst case scenario. What I need to be sure you understand today is that short of that, even when you're not in direct conflict, Mr. Fernich's duty of loyalty to Mr. Zazueta Perez may cause him -- may hamper or restrict certain arguments that he can make, certain information that he can tell you, and certain things he can tell the government. Do you understand that?

DEFENDANT GIL ACOSTA: Yes, I understand that.

THE COURT: Ms. Chong, is this acceptable to the government?

MS. CHONG: Your Honor, the government has just one question, whether Mr. Gil Acosta understands that if the defendants' interests clash there is a risk Mr. Fernich will continue to represent both, thereby resulting in a compromise to his own defense.

THE COURT: All right. So Mr. Gil Acosta, what the prosecutor says is correct. We're talking here about possibilities. We're talking here about things that might happen, not things that necessarily will happen. There is a possibility that there could be a conflict between your defense and Mr. Zazueta Perez's defense and that Mr. Fernich could continue to represent you, and as a result your defense could

P8LJZAZC

be impaired or compromised.

Do you understand that, sir?

DEFENDANT GIL ACOSTA:  Yes, I understand that.

THE COURT:  And it's still your wish to go forward with Mr. Fernich as your attorney?

DEFENDANT GIL ACOSTA:  Yes, that's my wish.

THE COURT:  You've heard me say this to Mr. Zazueta Perez.  I will say this to you.  Do you understand that you have a right to consult with an attorney other than Mr. Fernich in order to determine whether you wish to have Mr. Fernich represent you?

DEFENDANT GIL ACOSTA:  Yes.  Yes, I did hear that.

THE COURT:  And do you understand that if you cannot afford another attorney, the Court will appoint counsel to consult with you regarding these conflict of interest matters without cost to you?  That attorney -- well, let me end it right there.  Do you understand that we would get somebody and we wouldn't charge you for the second attorney?

DEFENDANT GIL ACOSTA:  Yes, I understand that very well.

THE COURT:  Sir, have you had a chance to speak with Mr. Rosenberg today?  I was in another room at the time.  Did you consult with him on some of these issues?

DEFENDANT GIL ACOSTA:  Yes, I spoke with him -- with my attorney just recently.

P8LJZAZC

THE COURT:  I see.  Let me ask this question.  We can -- if you want to speak to someone privately about these issues, I can appoint another attorney, Mr. Rosenberg or someone else.  I want you to understand that that attorney is not connected to Mr. Fernich, not connected to me, not connected to the prosecutors in this case.  And anything you tell that attorney would be private or privileged, a secret between the two of you, that that attorney could not then convey to me or to Mr. Fernich or to the government.  So do you understand that if you want to speak with another attorney for what I'll call a second opinion, that you can have that opportunity?

Do you understand that, sir?

DEFENDANT GIL ACOSTA:  Yes, I understand that and -- and -- yes, I understand that very well.  I have no doubts.

THE COURT:  Do you want to break today to speak with that other attorney or do you wish to go forward?

DEFENDANT GIL ACOSTA:  I wish to go forward.

THE COURT:  And so you are saying "no thanks" to the possibility of consulting with another attorney?

DEFENDANT GIL ACOSTA:  That is correct.  Yes.

THE COURT:  Do you understand, sir, that in every criminal case, including this one, a defendant is entitled to the assistance of counsel whose loyalty to him is undivided and who is not subject to any force or consideration that might in

P8LJZAZC

any way intrude upon the attorney's loyalty to the client's interests?

DEFENDANT GIL ACOSTA:  Yes, I understand that very well.

THE COURT:  Have you had an opportunity to speak with Mr. Fernich about the conflict of interest issues that arise because of his representation of Mr. Zazueta Perez?

DEFENDANT GIL ACOSTA:  Yes, your Honor.

THE COURT:  Do I also understand that while I was away from the bench, you also spoke with Mr. Rosenberg in the presence of Mr. Fernich to discuss these issues?

DEFENDANT GIL ACOSTA:  Yes, your Honor.  Yes.

THE COURT:  And you've also declined the opportunity to speak with another attorney about these issues, correct?

DEFENDANT GIL ACOSTA:  Correct.  Yes.

THE COURT:  You've heard Mr. Fernich say this.  You're going to hear me say this.  You heard me say this earlier to Mr. Zazueta Perez.  No one can predict with any certainty the course that this case will take or how the restrictions on Mr. Fernich's abilities to represent you will affect you.

Do you understand that, sir?

DEFENDANT GIL ACOSTA:  Yes, your Honor.

THE COURT:  And do you understand that the restrictions on Mr. Fernich's abilities to represent you may adversely affect Mr. Fernich's representation of you in this

case in ways that we have not yet discussed?

DEFENDANT GIL ACOSTA:  Yes.

THE COURT:  As I mentioned to Mr. Zazueta Perez, and I know you were listening to this, the restrictions on Mr. Fernich could affect the way that he considers whether you should cooperate with the government, whether you should waive indictment, whether you should plead guilty, what motions to file on your behalf, what arguments to make on your behalf to the Court, and what arguments to make and what facts to bring to the Court's attention at your sentencing.  Those are just a few of the examples.

Do you understand them, sir?

DEFENDANT GIL ACOSTA:  Yes, I understand.

THE COURT:  Do those examples cause you any concern?

DEFENDANT GIL ACOSTA:  No.

THE COURT:  Why not, sir?

DEFENDANT GIL ACOSTA:  Because I understood everything I was told really well and what it is for him to represent both of us.

THE COURT:  Are you aware that if you're convicted, sir, you will not be able to appeal on any of the issues that I've discussed with you today if you elect to waive the potential problems associated with Mr. Fernich's restrictions on his representation of you and elect to retain Mr. Fernich as your attorney in this case?

P8LJZAZC

DEFENDANT GIL ACOSTA:  Yes.

THE COURT:  Do you understand that an appellate court would take into account your consent to Mr. Fernich's representation of you and would hold that you have given up your right to complain of any problems associated with his restrictions on his representation of you?

DEFENDANT GIL ACOSTA:  Yes, I understand.

THE COURT:  Do you understand that if you were to proceed with Mr. Fernich as your attorney, you will not be able to claim later on that you were prejudiced in any way because of the restrictions on his representation of you?

DEFENDANT GIL ACOSTA:  Yes, I understand.

THE COURT:  Having considered the ways in which Mr. Fernich's restrictions on his representation of you may affect his representation of you, do you still wish to proceed in this case with Mr. Fernich as your attorney?

DEFENDANT GIL ACOSTA:  Yes, I will continue to go forward.

THE COURT:  With him as your attorney, sir?

DEFENDANT GIL ACOSTA:  Yes.  Yes, your Honor.

THE COURT:  Now, listen to this as well, please. Having considered the ways in which Mr. Fernich's representation of Mr. Zazueta Perez may affect his representation of you, do you consent to Mr. Fernich also representing Mr. Zazueta Perez in this matter?

P8LJZAZC

DEFENDANT GIL ACOSTA:  Yes, I understand that also and it's okay.

THE COURT:  Have you received any inducement or promise that may have influenced your decisions today on these issues?

DEFENDANT GIL ACOSTA:  No, your Honor.

THE COURT:  Is your waiver of your right to conflict-free representation voluntary?

DEFENDANT GIL ACOSTA:  Yes.

THE COURT:  Have you been threatened or forced in any way to make these decisions today about your representation?

DEFENDANT GIL ACOSTA:  No.  No.  No.

THE COURT:  Is there anything that I've said to you today that you wish me to explain to you further?

DEFENDANT GIL ACOSTA:  No, your Honor.  Thank you.

THE COURT:  Ms. Chong, any additional or followup questions you would like me to ask?

MS. CHONG:  No, your Honor.

THE COURT:  Mr. Fernich, any additional or followup questions you would like me to ask?

MR. FERNICH:  I'm good, Judge.

THE COURT:  Once against, Mr. Gil Acosta, having spoken with you at some length today and having observed both your reactions to my conversations with Mr. Zazueta Perez and to your demeanor as I've spoken with you, I find that you

P8LJZAZC

understand these issues and that you are knowingly and voluntarily waiving your right to conflict-free counsel. Mr. Fernich, can, if you wish him to, represent you in this matter as he is also representing Mr. Zazueta Perez.  Given that decision, I am, if counsel agrees, going to release Mr. Rosenberg with my deepest thanks for staying today and for his assistance.

MR. ROSENBERG:  My pleasure to always be a service to the Court.

THE COURT:  And you have been today, sir.  I thank you very much.

Now, there are still things to be done.  So let me turn to -- while I have Mr. Gil Acosta next to Mr. Fernich, let me do this.  Mr. Fernich, do you have a copy of the indictment in this case?

MR. FERNICH:  One of them has some of my scrawl on it, but I happen to have both of them, yes.

THE COURT:  And by "both," you mean both the English language and the Spanish language versions?

MR. FERNICH:  No, only English.

THE COURT:  Please excuse me.  Ms. Chong, is there a Spanish language translation of this document?

MS. CHONG:  There is, your Honor.  And --

THE COURT:  If you have it, could you arrange to get it for Mr. Fernich or is that only for CJA attorneys?

P8LJZAZC

MS. CHONG:  The superseding indictments have not been translated yet, but we can get translations.

THE COURT:  However that works out, as long as -- I don't care which of you does it, but I want to make sure someone does it.  But I suppose it has also been satisfied if it has been read to him in Spanish.  Has that been done Mr. Fernich.

MR. FERNICH:  I've discussed with both clients the thrust of the charges.  They understand them.  I'll take it upon myself to get them translated copies of the indictment, but they understand the nature of the charges.  We waived the public reading last time, and they're both prepared to enter pleas of not guilty today.

THE COURT:  May I confirm with each client?

MR. FERNICH:  Yes, your Honor.

THE COURT:  Just so I'm clear, your client has also been presented before the duty magistrate judge, correct?

MR. FERNICH:  Yes.

THE COURT:  In advance of that proceeding, was the indictment summarized for your client?

MR. FERNICH:  Yes, ma'am.

THE COURT:  Thank you.  All right.  So Mr. Gil Acosta, let me ask you several questions, please, sir.  I understand from speaking with your attorney that the indictment that concerns you in this case was read to you, summarized for you

P8LJZAZC

in Spanish; is that correct, sir?

DEFENDANT GIL ACOSTA:  Yes, your Honor.

THE COURT:  I'm also advised that you had an opportunity to discuss the charges against you with your attorney; is that also correct?

DEFENDANT GIL ACOSTA:  Yes, your Honor.

THE COURT:  I understand that you are waiving the public reading of the indictment in this case; is that correct? I don't need to read the document word for word into the record; is that correct?

DEFENDANT GIL ACOSTA:  Yes.

THE COURT:  And that today you wish to enter a plea of not guilty on the charges; is that correct?

DEFENDANT GIL ACOSTA:  That is correct.

THE COURT:  We will record that, please, sir.

I'm going to give Mr. Fernich a moment to sit next to his other client, Mr. Zazueta Perez, and I'm going to ask the same four questions.

Mr. Fernich, may I understand that the statements you made to me regarding Mr. Gil Acosta apply equally to Mr. Zazueta Perez?

MR. FERNICH:  Same, your Honor.

THE COURT:  Thank you.  Mr. Zazueta Perez, your attorney advises me that he has reviewed with you the indictment in this case and that it has been summarized for you

P8LJZAZC

and translated in summary for you so that you understand the charges against you, and that was translated into Spanish; is that correct?

DEFENDANT ZAZUETA PEREZ:  Yes, your Honor.

THE COURT:  I understand that you've had an opportunity to speak with Mr. Fernich about the charges against you also, correct?

DEFENDANT ZAZUETA PEREZ:  Yes.

THE COURT:  I understand that you are waiving the public reading of the indictment, meaning I don't have to read it into the record of the court; is that correct?

DEFENDANT ZAZUETA PEREZ:  That is correct, yes.

THE COURT:  And I understand that you are entering or asking me to enter for you a plea of not guilty; is that correct?

DEFENDANT ZAZUETA PEREZ:  That is correct.

THE COURT:  Thank you.

Ms. Chong, I believe sometime last week, I sent to you an order under amended Rule 5(f).  May I please confirm that the government is aware of and has discharged its discovery obligations and will continue to do so?

MS. CHONG:  Yes, your Honor.

THE COURT:  Have you spoken, Ms. Chong, with defense counsel regarding next steps in this case?

MS. CHONG:  Your Honor, we had a preliminary

P8LJZAZC

discussion.

THE COURT:  Okay.  I know there's been -- there's a schedule that I was given before now with motions being filed in October.  Is that what you've been talking about or something else?

MS. CHONG:  No, your Honor.  We simply discussed what might be the next steps in the case.

THE COURT:  Okay.  Have you discussed a manner by which discovery can be transmitted to him?

MS. CHONG:  Your Honor, we have not.  However, in this case we anticipate it would just be online and by hard drive.  The government is asking for three weeks from any discovery request to make productions.  And the government also proposes 60 days until the next status conference so that the parties can confer.

THE COURT:  And may I understand that at that point I'll be advised whether there are motions to be had or things of that nature?  Is that your understanding?

MS. CHONG:  Your Honor, I would defer to the defense on that.  However, certainly the defense would have the discovery and would be I think in a position to discuss that with the Court.

THE COURT:  Just for my knowledge, are there post-arrest statements that need to be transmitted to counsel?

MS. CHONG:  Your Honor, our understanding is that

P8LJZAZC

there are not.  That said, the defendants were taken into custody in Mexico, and so we are making certain inquiries.

THE COURT:  And while I'm happy to have you do it on the record, have you discussed with Mr. Fernich the types of materials that would be produced in discovery?

MS. CHONG:  No, your Honor, but we do intend to.

THE COURT:  Okay.  And may I understand that it would be similar to discovery to that produced in other cases?

MS. CHONG:  Yes, your Honor.  And much of the discovery would be what was produced in the other cases regarding the other defendants in this case.

THE COURT:  Okay.  I'm going to talk to Mr. Fernich in a moment, but let me just ask you this question, please.  My records reflect that for other defendants in this case there is a trial date set of April 13, and there's discussion about a conference at which a different or perhaps the same trial date would be set.  Is this a conference at which Mr. Fernich should be present, or will he be on a separate track given the recency of the arrivals of these two defendants?

MS. CHONG:  Your Honor, the government's position is that likely it would make sense for these two defendants to be placed on a separate track in light of the recency, as the Court just stated.

THE COURT:  I understand that and I appreciate knowing that.  Okay.  Thank you.  Mr. Fernich.

MR. FERNICH:  Ms. Chong just noted what I was about to say, so 60 days is fine.  I don't know the first thing about the case, which is a good thing.

THE COURT:  Well, you've read the indictment.

MR. FERNICH:  Well, that -- the Court's explaining that we don't know how it's going to play out or how it's going to unfold, so that was very helpful.  60 days is fine.  And Ms. Chong and I, I'm confident, will work cooperatively to get the discovery going and figure out how the case is going to proceed.

THE COURT:  Thank you.  So at any point before now, have you had a chance to speak with your clients about the Speedy Trial Act?  Because I suspect there's going to be an application from the government.

MR. FERNICH:  Yes, we'll consent to exclusion in the interest of justice.  It's probably been designated complex already, but certainly we would need time to review the discovery, engage in motion practice, and potentially have some discussions with the government about a resolution.  So we'll consent to a waiver.

THE COURT:  I appreciate that.  My question is I don't want your clients --

MR. FERNICH:  I have not in candor spoken with them about the Speedy Trial Act.

THE COURT:  May I confirm that in your next conference

P8LJZAZC

with them that's outside of my presence that you will have the opportunity to do that?

MR. FERNICH:  Hundred percent.

THE COURT:  Thank you so much.  So Ms. Noriega, may I have a date about 60 days out?

THE DEPUTY CLERK:  October 21 at 10:00 a.m.

THE COURT:  Is that a date and time that works for the government?

MS. CHONG:  Yes, your Honor.

THE COURT:  Is that a date and time that works for the defense?

MR. FERNICH:  Can I have one second, please.

THE COURT:  Of course, sir.

MR. FERNICH:  Yes, that's fine.

THE COURT:  Okay.  Thank you.  Ms. Chong, is there an application from the government?

MS. CHONG:  Yes, your Honor.  The government requests exclusion of time until October 21, 2025.  The ends of justice served by the exclusion would outweigh the interest of the defendants and the public in a speedy trial as it will allow the parties to discuss a possible pretrial disposition and for the defendants to review any discovery in this case.

THE COURT:  Thank you.  Mr. Fernich?

MR. FERNICH:  We consent.

THE COURT:  Thank you.  May I address your clients,

P8LJZAZC

sir?

MR. FERNICH:  Yes.

THE COURT:  Thank you.  Mr. Zazueta Perez and Mr. Gil Acosta, please understand that I cannot provide you legal advice, and also you're watching my head turn from side to side because you're at opposite ends of the room.  Your attorney will take the time to explain to you the Speedy Trial Act. What I will say to you is that it is an act that comes up and applies in all criminal conferences.  And what it is designed to do is to make sure that your case is not forgotten, that you're not stuck in jail or waiting for the resolution of your case for undue periods of time.

So it specifies a period of time by which trial must be had in the case if a trial is going to be had.  But there are exceptions, and the one that applies here is the exception where the interests of justice that are served by excluding a particular period of time outweigh the interests that you personally have and that the public in general has in you getting to trial more quickly.

It is very common, and this is exactly the case where this would come up, where you would exclude the time between the first and second conferences in the case because I want your attorney to get the discovery in this case.  I want him to review it with you.  You need to talk about the options that you have available to you, which might include motion practice.

P8LJZAZC

It might include a plea.  It might include trial.  And then your attorney needs to have time to speak with the government about followup issues.

So all of these are very important things because you need to have all of this information before you can make the right decision for you.  And I'm therefore finding that the ends of justice served between today's date and October 21, that time should be excluded because the interests of justice in excluding that time outweigh the interests that each of you has in getting to trial more quickly and outweigh the interests that the public in general has in your getting to trial more quickly.  Once again, this is the time for you to get all of the information possible and for your attorney to get that information and then speak with you.  So time is excluded until our next conference.

Ms. Chong, I do thank you for staying as long as you have today.  Is there anything else I should be addressing with you that I have failed to address with you?

MS. CHONG:  No, your Honor.  Thank you.

THE COURT:  Okay.  Thank you. And Mr. Fernich, the same question, sir.  Is there anything we should be talking about that we have forgotten to talk about today?

MR. FERNICH:  No, I think we're good right now, Judge.

THE COURT:  Okay, thank you.  I will see you all on the -- wait one moment, please.  Mr. Fernich, why don't you

P8LJZAZC

speak with Mr. Gil Acosta.

(Counsel and defendant conferred)

THE COURT:  Mr. Fernich, I wanted to make sure there was nothing else you wanted to bring to my attention.

MR. FERNICH:  No, ma'am.

THE COURT:  Okay.  Thank you.  I'm sure our next conference will be a little bit shorter.  Thank you all --

MR. FERNICH:  Sorry about that.

THE COURT:  No, it had to be done, sir.  The most important thing is your clients understanding what's going on. We are adjourned.

Mr. Fernich, please get a transcript of this.  Thank you.

(Adjourned)