UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br><br>v.<br><br>ANA GABRIELA RUBIO ZEA,<br>Defendant. | CRIMINAL NO. 23-CR-180 (KPF) |

# SENTENCING MEMORANDUM*

By: Judith Vargas, Esq.
The Law Offices of Judith Vargas
20 Vesey Street
Suite 400
New York, NY 10007
Office (212) 668-0024
Cell: (917) 270-5313
Email:  judithvargaslaw@gmail.com
judithvargas1@aol.com

---

\*      This public version redacts/omits material filed under seal.

## <u>TABLE OF CONTENTS</u>

**Introduction** ................................................................................................................ 1

**The Presentence Report** ............................................................................................ 2

**The PSR-Recommended Sentence of 72 Months does not Fully Take into Account Ms. Rubio Zea's Background, History and Characteristics, and Should not be Imposed by the Court** ............................................................................................................... 3

**Application of the § 3553 Factors to Ms. Rubio Zea's Case** ................................... 4

    Nature and Circumstances of the Offense ................................................................ 4

    History and Characteristics ..................................................................................... 4

    Family Ties and Collateral Consequences of Defendant's Incarceration .............. 5

    Role in the Offense ................................................................................................. 6

    Absence of Prior Criminal History ......................................................................... 7

    Forensic Psychological Evaluation .......................................................... .............. 8

        a. Background and Trauma History ................................................... 8

        b. Psychological and Cognitive Findings .......................................... 9

        c. Test Results ................................................... ............................... 10

        d. Mitigating Psychological Terminology ....................................... 11

        e. Findings Supporting Mitigation and Rehabilitation ..................... 11

        f. Lack of Mental Health Treatment in Correctional Institutions ...... 12

        g. Educational Courses and Rehabilitation .......................................... 12

        h. Psychological Evaluation Conclusion and Mitigation Points ....... 12

    Sentencing Letters Provided in Support .................................................................. 13

    Acceptance of Responsibility and Remorse ............................................................ 15

    [REDACTED] ........................................................................................................ 16

**The Importance of the 3553 Factors to the Determination of a Just Sentence** ................. 18

**Rehabilitative Efforts—Commitment to Personal Growth and Self-Development** .......... 20

    List of Courses ...................................................................................................... 20

**Current Incarceration Conditions** ........................................................................... 23

**Sentencing Options for Non-Citizen Defendants Facing Removal** ......................... 25

**Avoidance of Unwarranted Sentencing Disparities (§ 3553(a)(6))** ........................ 26

    Roles and Conduct Comparison of Co-Defendants (Chart)................................. ......... 26

    Discussion of Co-Defendants ................................................................................. 28

**Conclusion** ................................................................................................................ 30

**Exhibits** (attached as separate documents):

    **Exhibit A** – Letters in Support of Ms. Rubio Zea's Character

    **Exhibit B** – Letter to the Court from Ms. Ana Gabriela Rubio Zea

    **Exhibit C** – Forensic Psychological Evaluation Report

    **Exhibit D** – Certificates of Achievement

    **Exhibit E** -- List of Books Read by Ms. Rubio Zea

    **Exhibit F** – Letter of Recommendation and Transcript from Correctional Counsel, Mr. . Stephen Espinet

    **Exhibit G** -- Photos of Ms. Rubio Zea with her Son and with Family

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,
Plaintiff,

v.

ANA GABRIELA RUBIO ZEA,
Defendant.

CRIMINAL NO. 23-Cr-180 (KPF)

## SENTENCING MEMORANDUM

HON. KATHERINE POLK FAILLA
United States District Judge
Southern District of New York

### INTRODUCTION

Ms. Rubio Zea is scheduled to appear before this Honorable Court for her Sentencing Hearing on January 27, 2026, at 3:30 p.m. This Sentencing Memorandum and related exhibits are based upon the Presentence Report ("PSR"), and the following: Exhibit A – Letters in Support of Ms. Rubio Zea's Character; Exhibit B – Letter to the Court from Ms. Ana Gabriela Rubio Zea; Exhibit C – Forensic Psychological Evaluation Report; Exhibit D – Certificates of Achievement;[1]  Exhibit E -- List of Books Read by Ms. Rubio Zea; Exhibit F – Letter of Recommendation and Transcript from Correctional Counsel, Mr. Stephen Espinet; Exhibit G -- Photos of Ms. Rubio Zea with her Son and with Family. This information will provide the Court with pertinent sentencing related information pursuant to Title 18 U.S.C. §§ 3553(a), 3661, FED. R. CRIM. P. 32, and relevant caselaw, to aid the Court in fashioning an appropriate sentence, and in alignment with our request for a sentence of time served.

The Court faces the difficult task of sentencing Ms. Ana Gabriela Rubio Zea, a Guatemalan national who acted as a broker of fentanyl precursor chemicals. Although the offense in this case is serious it is essential that sentencing be tailored to the specific actions and circumstances of the individual involved. Under § 3553(a), the Court must impose a sentence on Ms. Rubio Zea that is "sufficient, but not greater than necessary" to achieve the purposes of sentencing.

---

1.      Some certificates in Exhibit D appear more than once due to technical issues during PDF merging. All unique courses are represented.

1

Sentencing Memorandum
*United States v. Ana Gabriela Rubio Zea,* 23-Cr-180 (KPF)
January 13, 2026

In this Sentencing Memorandum, we present a candid assessment of Ms. Ana Gabriela Rubio Zea's character and offense conduct for the Court's consideration. Our intention is to provide a comprehensive view that will enable the Court to determine a sentence that is fair and just, as well as effective and reasonable. In doing so we do not shy away from acknowledging the error Ms. Rubio Zea made in becoming involved in this offense. However, Ms. Rubio Zea played only a limited,  intermediary role in the offense. When the Court views Ms. Rubio Zea's conduct alongside the roles of the cartel leaders, violent enforcers, traffickers, laboratory operators, and money launderers charged in this case, the path forward becomes clear: a proportionate sentence must reflect who she is, what she actually did, and how fundamentally different her conduct was from theirs. For this reason we ask for a sentence of time served. Such a sentence is warranted to reflect her actual conduct, avoid unwarranted disparities, and promote fairness.

## I.    THE PRESENTENCE REPORT

In considering the appropriate sentence for Ana Gabriela Rubio Zea, the defense notes that the PSR includes reference to Judiciary Sentencing Information (JSIN) data. While JSIN is presented as a tool for assessing sentencing disparities among similarly situated defendants, its practical value and reliability remain subject to debate, particularly in light of judicial concerns about its context and methodology.[2]

Instead, the defense urges the Court to focus on the individualized circumstances of Ms. Rubio Zea, including her personal history, psychological evaluation, demonstrated acceptance of responsibility, extensive rehabilitation ██████████████████████████

---

2    The defense filed an objection with Probation to the inclusion of JSIN data in the Presentence Report (see Final PSR, p.26). This objection is consistent with the position taken by this Court at the sentencing of Mr. Marc Buckner, where this Court stated:

> *I do appreciate your objection to JSIN. I don't believe there is a proscription on me considering JSIN data. However, I also don't know at this early stage in its development, in this pilot program, how useful it is to me. So I can read what you can read. I see the numbers, but divorced from the factual context, I don't know if it provides me a tremendous amount of information. I do note your objection.* (Sentencing Tr. at 8:19–23, *United States v. Buckner,* No. 24-cr-380 (KPF) (S.D.N.Y. Oct. 16, 2024)).

Accordingly, the defense respectfully requests that the Court disregard JSIN data in determining an appropriate sentence for Ana Gabriela Rubio Zea.

Sentencing Memorandum
*United States v. Ana Gabriela Rubio Zea,* 23-Cr-180 (KPF)
January 13, 2026

███████████████████████████████████████████████████████

████████████████████████" PSR at 29.

### THE PSR-RECOMMENDED SENTENCE OF 72 MONTHS DOES NOT FULLY TAKE INTO ACCOUNT MS. RUBIO ZEA'S BACKGROUND, HISTORY AND CHARACTERISTICS, AND SHOULD NOT BE IMPOSED BY THE COURT

The PSR's recommendation of 72 months, PSR, Sentencing Recommendation at 28, though commendably at a variance from the Guidelines recommendation of 108 to 135 months, *id.,* does not sufficiently take into account all of Ms. Rubio Zea's history and characteristics. A sentence of time served would take into account all of the sentencing factors, including Ms. Rubio Zea's background, history and characteristics, which include her complex psychological profile shaped by severe childhood trauma, emotional neglect and prolonged abuse, her lack of a prior criminal history, her obligations as a new mother████████████████████████

████████████████████████████████████████

Ms. Rubio Zea was arrested in Guatemala and remanded into custody on this matter on March 17, 2023. She was then extradited into the United States in July of 2023. PSR at 2; ¶¶ 10, 45. She has remained in custody since then, PSR at 2, which by the date of her sentencing on January 27, 2026, including the approximately four months and 3 days incarceration in Guatemala prior to her extradition, will equal a total of 34 months and 10 days, or 2 years, 10 months, and 10 days. As the Court is aware, the reasonableness of a sentence is determined, not by the guidelines, but by a district court's individualized application of the statutory sentencing factors. *Gall v. United States,* 552 U.S. 38, 46-47 (2007). Sentencing Ms. Rubio Zea as recommended by the PSR does not abide by the fundamental statutory requirement in § 3553(a) that district courts consider the "nature and circumstances of the offense and the history and characteristics of the defendant" and the principle, emphasized in *Gall,* that courts must guard against unwarranted disparities among sentences for defendants who have been found guilty of similar conduct. *See Gall*, 552 U.S. at 55. Adhering to the PSR recommendation does not align with the statutory mandate to take into account Ana Gabriela Rubio Zea's individual life history and characteristics. Nor does it support the lodestar in sentencing: the parsimony clause of 18 U.S.C. § 3553(a), which directs sentencing courts to impose a sentence sufficient, but not greater than necessary, to comply with the factors set out in 18 U.S.C. § 3553(a)(2). As previously mentioned, it does not take into account Ms. Rubio Zea's complex psychological history and

3

Sentencing Memorandum
*United States v. Ana Gabriela Rubio Zea,* 23-Cr-180 (KPF)
January 13, 2026

makeup, as detailed in our forensic psychological report and discussed further below, nor her broader history and characteristics, including her rehabilitative efforts ████████████ ████████████████████████████████████████████████ ████████████████████████████████████

## II.    THE § 3553 FACTORS TO MS. RUBIO ZEA'S CASE

### NATURE AND CIRCUMSTANCES OF THE OFFENSE

The Court faces the difficult task of sentencing Ms. Ana Gabriela Rubio Zea, a Guatemalan national who acted as a broker of fentanyl precursor chemicals. While fentanyl is undeniably lethal and has devastated communities across the United States, sentencing must remain individualized. Under § 3553(a), the Court must impose a sentence "sufficient, but not greater than necessary" to achieve the purposes of sentencing. Ms. Rubio Zea's role was limited to connecting individuals with chemical suppliers in China. She did not manufacture fentanyl, distribute it domestically, or personally profit from its sale on the streets. A below-Guidelines sentence of time served, or nearly 3 years, is warranted to reflect her actual conduct, avoid unwarranted disparities, and promote fairness.

The Government will likely emphasize the harmful consequences of fentanyl trafficking, including its role in fueling the opioid epidemic and causing serious adverse outcomes in affected communities. Yet Ms. Rubio Zea's conduct was many steps removed from this harmful conduct. She acted as a broker of precursor chemicals, not as a trafficker of finished fentanyl. Punishing her as if she were directly responsible for distribution collapses critical distinctions in culpability. The Sentencing Commission has acknowledged that drug quantity thresholds often impose disproportionately severe sentences on peripheral actors, creating unwarranted disparities.

### HISTORY AND CHARACTERISTICS OF THE DEFENDANT

Ms. Rubio Zea has no prior criminal record. She was not a cartel leader or financier but a broker connecting suppliers and buyers, a role that reflects susceptibility to cartel influence rather than independent criminal enterprise. Since her arrest, she has demonstrated sustained rehabilitation: she earned her GED, completed dozens of educational, therapeutic, and vocational programs, read extensively, and has served as a tutor to other women also incarcerated at the Metropolitan Detention Center ("MDC"). She has acted as a translator for women who could not

Sentencing Memorandum
*United States v. Ana Gabriela Rubio Zea,* 23-Cr-180 (KPF)
January 13, 2026

otherwise communicate with staff or access programming, further contributing to the functioning and safety of the unit. Her conduct in custody has been exemplary, and she has consistently used her time to better herself and support others. She has also ██████████████████████ ████████ demonstrating her acceptance of ████████████████████████ ████████████████████████████ collateral consequences she faces. As a foreign national with limited resources, she confronts the additional hardship of deportation and permanent separation from her family, and she has already endured more than three years of incarceration away from her young son. These characteristics, together with her sustained rehabilitation, pro-social conduct, ████████████████████ weigh strongly against a continued custodial sentence. The sections that follow provide the fuller context for these points, including her personal history, psychological profile, and the accounts of those who know her best.

### FAMILY TIES AND COLLATERAL CONSEQUENCES OF DEFENDANT'S INCARCERATION

Ms. Rubio Zea's family relationships provide essential context for understanding her character, her vulnerabilities, and the support system that has shaped her life. Since her extradition to the United States, she has endured the profound hardship of being separated from her now three-year-old son. Because her child does not have a visa, he has been unable to travel to the United States, and as a result, Ms. Rubio Zea has not seen him in person throughout her entire period of incarceration, now going on three years. This prolonged separation has caused significant emotional distress for both mother and child, underscoring the collateral consequences of her detention and the urgent need for a sentence that allows for family reunification.

The letters submitted on her behalf make clear that her family is the central anchor of her life. Her aunts, cousins, parents, and extended relatives describe a young woman whose defining roles have always been those of daughter, niece, and caregiver. They recount her devotion to her son, her consistent presence in the lives of younger relatives, and her instinctive tendency to protect and support those around her. As detailed in the letters collected in Exhibit A, her relatives describe a young woman whose life has always revolved around her family and whose absence has left a profound void. These accounts portray a woman whose identity is rooted in family responsibility rather than criminality.

5

Sentencing Memorandum
*United States v. Ana Gabriela Rubio Zea,* 23-Cr-180 (KPF)
January 13, 2026

Her relatives also describe the profound impact her absence has had on the family as a whole. Her mother writes of a grandson who is growing up confused, calling other women "Mom" in her absence. Her father and stepfather emphasize that the early years of a child's life are formative and irreplaceable, and that continued separation risks long-term emotional harm. Her aunts and cousins speak to the void left in the family structure and the collective hope that she will be able to return home to resume her role as a mother, daughter, and sister.

These letters also reflect a family that remains steadfastly committed to her rehabilitation and reintegration. They offer emotional support, housing, and stability upon her return, demonstrating that she has a strong and reliable network ready to help her rebuild her life. This support system is a critical factor in assessing her likelihood of successful reentry and weighs heavily in favor of a sentence that does not prolong her separation from them.

Taken together, Ms. Rubio Zea's family ties reveal a woman whose life has been defined by connection, responsibility, and care for others. They underscore the human cost of her continued incarceration and highlight the strong, stabilizing relationships that will guide her rehabilitation moving forward. These considerations strongly support a sentence that allows her to reunite with her son and return to the family that depends on her.

## ROLE IN THE OFFENSE

Another important consideration in fashioning an appropriate sentence is the role a defendant played in the offense. As reflected in PSR ¶ 28, Probation identifies Ms. Rubio Zea as a Guatemala-based broker who connected members of the conspiracy with chemical suppliers in China. She was not a cartel leader, financier, chemist, or operational actor; rather, she served as an intermediary who facilitated communications and transactions.

The PSR's description of the offense conduct confirms this characterization. In PSR ¶¶ 29–33, Probation describes negotiations and a seized shipment of precursor chemicals she ordered. PSR ¶¶ 34–42 summarize her recorded meetings and communications with an undercover officer. PSR ¶¶ 43–44 note that she used a Guatemalan import-export company she controlled, IGIGI Technologies, to conceal precursor purchases; as she explains in her letter to the Court (Exhibit B), IGIGI was originally created as a legitimate bioplastics business before she misused it. PSR ¶ 45 reiterates that she acted as a broker whose conduct facilitated the production, importation, and distribution of fentanyl.

Taken together, these paragraphs depict conduct that was serious but non-violent,

6

Sentencing Memorandum
*United States v. Ana Gabriela Rubio Zea,* 23-Cr-180 (KPF)
January 13, 2026

facilitative, and lacking in authority, leadership, or operational control. The PSR does not allege that she directed others, engaged in violence, manufactured fentanyl, or participated in distribution. Instead, it consistently places her at the periphery of the conspiracy as a broker who connected parties and relayed information. This understanding of her role is also consistent with the broader record in this case, which reflects that her conduct was materially different from the violent, operational, and managerial roles occupied by many of her co-defendants. These distinctions are addressed more fully in our § 3553(a)(6) disparities analysis below.

This acknowledgment of her role does not excuse her conduct or diminish the seriousness of the offense. Ms. Rubio Zea understands that her actions had consequences and fully accepts that accountability is required. What distinguishes her now is the clarity with which she recognizes the harm and her commitment to ensuring that this conduct is never repeated.

### ABSENCE OF PRIOR CRIMINAL HISTORY

Also noteworthy is that Ms. Rubio Zea has never been in trouble with the law. Probation agrees that a non-guidelines sentence is appropriate. As the PSR explains, "[w]e considered the mitigating sentencing factors, specifically the defendant's lack of criminal history. Rubio Zea is a first-time offender, who does not have a history of violence. She has adjusted well to her time in the Bureau of Prisons as she has not incurred any disciplinary sanctions and has completed numerous educational courses, including business-related and other self-improvement courses as verified by BOP records." PSR, Justification at 29. The law supports this recommendation. A defendant's lack of prior criminal history is a factor to which courts must give meaningful weight in determining a just sentence. Her clean record demonstrates structure, stability, and an ability to abide by the rules of society. It also underscores the strong likelihood—indeed, her entire life reflects this—that Ms. Rubio Zea is highly unlikely to commit any further offenses, a critical consideration for the Court.

We recognize that these positive qualities are attributes one would hope to find in any law-abiding individual. However, the law requires sentencing courts to consider *everything* about a defendant—the good as well as the not-so-good. Under 18 U.S.C. § 3553(a), judges must evaluate not only the specifics of the offense but also the individual characteristics of the defendant. This includes how the offense was carried out, its impact, the defendant's criminal history, personal background, and any mitigating or aggravating circumstances.

7

Sentencing Memorandum
*United States v. Ana Gabriela Rubio Zea,* 23-Cr-180 (KPF)
January 13, 2026

Taken together, these considerations underscore why Ms. Rubio Zea's lack of criminal history is so significant. It is not simply the absence of prior arrests; it is the presence of a stable, prosocial life that stands in sharp contrast to the conduct at issue here. Her background, her adjustment in custody, and her demonstrated ability to follow rules all point in the same direction: this offense is an aberration, not a pattern.

Because § 3553(a) requires the Court to consider the "history and characteristics of the defendant," we sought to provide the Court with a fuller, clinically informed understanding of those characteristics. To that end, we requested an in-depth forensic psychological evaluation of Ms. Rubio Zea. See Psychological Report (Dec. 3, 2025) ("Psych. Rpt."). The report, attached as Exhibit C, offers a comprehensive assessment of her personal history, psychological functioning, and rehabilitative needs. Below, we summarize the key findings and the evaluator's recommended treatment plan.

### FORENSIC PSYCHOLOGICAL EVALUATION OF ANA GABRIELA RUBIO ZEA

The psychological evaluation provides a deeper understanding of Ms. Rubio Zea's background and the factors that shaped her decision-making at the time of the offense. Conducted by a licensed forensic psychologist with decades of expertise in trauma, personality assessment, and risk evaluation, the report offers a clinically grounded picture of her psychological functioning, strengths, and vulnerabilities. It also identifies the treatment interventions most likely to support her continued rehabilitation. The findings are consistent with the PSR's view that this offense is out of character and that Ms. Rubio Zea presents a low risk of recidivism. Below, we summarize the evaluator's key conclusions and recommended treatment plan.

a.    **Background and Trauma History:**

The report reveals "a marked contrast between Ms. Rubio Zea's efforts to present herself as psychologically strong and symptom free, and an underlying significant vulnerability to depression, anxiety, and other dysfunctional psychological states." Psych. Rpt. at 2. She "reports a history of adverse childhood experiences in which she was spoiled materially, but emotionally neglected, shuttled between different family members, and sexually abused for three years[3] by an

___

3.    Ms. Rubeo Zea reported to Probation that the sexual abuse occurred to her between the ages of 4 and 11. PSR ¶ 83.

8

Sentencing Memorandum
*United States v. Ana Gabriela Rubio Zea,* 23-Cr-180 (KPF)
January 13, 2026

older male cousin, beginning at age three, and not believed by her parents." *Id.*

In her own words, "I was spoiled with many toys and even had an iPad[4] at that age. However, especially in retrospect, I felt they neglected me emotionally." Psych. Rpt. at 3. The report details, "██████ went on to molest her over several years, ████████████ ██████████████████████████████████████████████████…

She says that she informed her mother about the molestation, who in turn complained about it to her father. However, she was not believed and was called a liar. As the abuse continued, other cousins wanted to participate. On one occasion, another cousin, ████████████, tried to rape her but she was able to escape. After this incident she never returned to her grandmother's house. Ms. Rubio Zea reports that there were other girls in the family who were also abused." *Id.*

Her mother confirmed, "I was very spoiled and neglected Ana. I would go out and drink and use drugs if they were available. I am appreciative that my grandparents took good care of my daughter and I regret my behavior." Psych. Rpt. at 7. The report further notes, "Ana saw her [mother] beaten up and bloody several times and she called the police to request help. She feels very guilty for not fulfilling her responsibilities as a mother." *Id.*

b.      **Psychological and Cognitive Findings:**

The examiner found that "in apparent response to her trauma, she developed a pattern of avoidance, denial, compartmentalization, and dissociation. While extreme and pathological defenses enabled her to avoid painful memories and shielded her from feelings of shame and vulnerability, they impacted negatively on her reality testing, compromised her emotional and interpersonal life and resulted in impaired judgment and a chronic failure to recognize the full implications of her circumstances and conduct." Psych. Rpt. at 2.

Testing revealed "superior verbal functioning in the context of underlying weaknesses in reasoning and evidence of a learning disability rooted in brain-based deficits in visual spatial functioning and cognitive processing speed as well as by her cultural background in which accomplishment, dignity and family reputation are overly emphasized while problems are hidden or denied." Psych. Rpt. at 2, 11–12. Her "vocabulary was extensive and she evidenced strong expressive abilities and crystallized intelligence. However, there were indications that her ability

---

4.      Ms. Rubio Zea clarifies that she was given a cell phone, not an iPad, as iPads were not available at that time.

Sentencing Memorandum
*United States v. Ana Gabriela Rubio Zea,* 23-Cr-180 (KPF)
January 13, 2026

to think conceptually is much weaker than her lexical/word knowledge." Psych. Rpt. at 12.

### c.    Test Results:

The forensic psychological evaluation revealed the following:

- "Ms. Rubio obtained a Full IQ ███████████████████████ of intellectual functioning, in the ████ percentile in comparison to similarly aged peers. However, there is a clinically significant difference between her Verbal Comprehension Index and her Perceptual Reasoning Index of 22 points. This 22-point gap between the Indexes occurs in about 6 % of the population. Therefore, this represents a statistically significant difference indicative of uneven intellectual functioning." Psych. Rpt. at 11.

- "Significant deficits were indicated on visuospatial constructional scores, which were in the lowest 2nd percentile in comparison to similarly aged peers. This, in combination with a very poor score on a task of processing speed (Coding, lowest 5th percentile) are highly suggestive of a brain-based learning disability/neuropsychological deficit in the area of visuomotor functioning." Psych. Rpt. at 12.

- "Ms. Rubio Zea obtained an extremely elevated score, in the 97th percentile on the Response Level (RL) scale of the TSI-2… highly suggestive of a high degree of denial, dissociation and compartmentalization of affect and an overriding, even pathological need to present herself to both herself and others as mentally strong and unperturbed." Psych. Rpt. at 13–14.

- "Her score on the BDI-II is extremely low for individuals in general and, in my experience, unheard of in a jail population. It is, like the results of the TSI-2, indicative of an extreme degree of denial, dissociation and compartmentalization of affect and an overriding, even pathological, need to present herself to both herself and others as mentally strong and unperturbed." Psych. Rpt. at 14.

- "The results manifest an avoidant, schizoid, compulsive and narcissistic personality dysfunction… strong ambivalent feelings, and indecisiveness behind a very controlled façade. She has grandiose fantasies that are reinforced by exaggerations and distortions of reality… efforts to restrict and deny her emotions, and detachment from social connections." Psych. Rpt. at 14–15.

- "The results of the Rorschach are indicative of a psychologically fragile individual who is subject to depression and/or other emotional disturbance. The Rorschach indicates that Ms. Rubio Zea is under considerable emotional distress resulting from painful internalized affects that she has denied and suppressed and fears expressing." Psych. Rpt. at 15–16.

### d.    Mitigating Psychological Terminology:

The psychological report uses clinical terms such as "pathological," "schizoid," "narcissistic personality dysfunction," "emotional disturbance," and "emotional distress" to describe certain coping mechanisms and personality traits observed in Ana Gabriela Rubio Zea.

10

Sentencing Memorandum
*United States v. Ana Gabriela Rubio Zea,* 23-Cr-180 (KPF)
January 13, 2026

We provide explanations of this clinical terminology below. The explanations are based on standard definitions and interpretations widely accepted in mainstream psychology and psychiatry. These clarifications are offered to assist the Court in understanding that, when such terms appear in forensic psychological reports, they do not imply dangerousness, untreatable mental illness, or a propensity for criminal behavior. Rather, these terms are descriptive of adaptive responses to trauma and emotional neglect, and are commonly interpreted in both clinical and legal settings as indicators of psychological vulnerability and the lasting impact of adverse experiences—not as predictors of future criminality or violence.

- "Pathological" in this context refers to extreme psychological defenses—such as denial, avoidance, and compartmentalization—that Ana developed to survive overwhelming childhood abuse and neglect. These defenses, while maladaptive in adulthood, are common among trauma survivors and do not equate to criminal intent or risk to others. Psych. Rpt. at 2, 17.

- "Schizoid" personality features describe a tendency to withdraw emotionally and avoid close relationships, often as a protective mechanism against further harm. In Ana's case, these traits are a direct result of her history of betrayal and lack of support, not a sign of psychosis or antisocial behavior. Psych. Rpt. at 14–15.

- "Narcissistic" traits reflect Ana's need to maintain a façade of competence and self-worth in the face of chronic invalidation and humiliation. This is not the same as narcissistic personality disorder; rather, it is a defense against feelings of inadequacy and vulnerability. Psych. Rpt. at 15, 17.

- "Emotional disturbance" and "emotional distress" in the report are not indicators of instability or risk, but rather evidence of the profound suffering Ana has endured as a result of her traumatic experiences. These terms highlight her vulnerability and need for support, not punishment.

e.      **Findings Supporting Mitigation and Rehabilitation:**

The report concludes "[t]he results of the current assessment are indicative of an extremely marked contrast between Ms. Rubio Zea's pollyannish presentation on the one hand, and the testing results indicative of pathological denial and very significant emotional vulnerability and distress… her psychological profile is consistent with those of individuals who are traumatized by protracted abuse in childhood and who develop a pattern of extreme avoidance, denial and dissociation." Psych. Rpt. at 17.  "Regardless of what specifically occurred to her, [discussed further in Dr. Drob's Report] there are indications that despite her denial of symptoms, and efforts to present herself as flawless and in control, Ms. Rubio Zea is a highly psychologically vulnerable individual who exhibits cognitive, and especially emotional

11

handicaps. If there are feelings of loneliness and isolation, they are kept under guard and not shared with others. The combination of an avoidant personality with schizoid features and persistent denial points to the presence of a 'masked depression.'" *Id.*

The psychologist recommends "[s]he should be engaged in a supportive form of counseling that is aimed at developing her emotional awareness, reducing her reliance on denial and grandiosity, improving her social skills, and providing her with a setting in which she can express long suppressed feelings related to her reported sexual trauma and other adverse life experiences. Psychotherapy should also be initiated to provide her with education regarding trauma, its impact, the nature of psychological defenses, and to help her work towards strengthening her capacity for empathy, responsibility and the consequences of her actions." Psych. Rpt. at 18.

### f.        Lack of Mental Health Treatment in Correctional Institutions:

The psychological report strongly recommends supportive counseling, *id.,* however it is well-established that meaningful, trauma-informed mental health treatment is rarely available in correctional settings. Ana will never be able to obtain proper, supportive mental health treatment or counseling while incarcerated, especially given her complex trauma history and need for specialized care. Continued incarceration will only reinforce her pathological defenses and emotional isolation, undermining the rehabilitative goals of sentencing.

### g.        Educational Courses and Rehabilitation:

Despite these challenges, Ana has demonstrated a strong commitment to rehabilitation and personal growth. As detailed in the "Rehabilitative Efforts" section of our Sentencing Memorandum, Ana has completed numerous educational programs while incarcerated at MDC, including courses in social issues, parenting skills, marketing, music, and basic fitness. See Psych. Rpt. at 5; see also "Rehabilitative Efforts," below. These efforts reflect Ms. Rubio Zea's motivation to change, her capacity for self-improvement, and her readiness to reintegrate into society.

### h.        Psychological Evaluation Conclusion and Mitigation Points:

The forensic psychological evaluation demonstrates that Ms. Rubio Zea's offense was not driven by criminal intent or a propensity for dangerous behavior. The psychological terminology used in the report should be understood as evidence of Ana's vulnerability and the impact of her

Sentencing Memorandum
*United States v. Ana Gabriela Rubio Zea,* 23-Cr-180 (KPF)
January 13, 2026

trauma, not as aggravating factors. Rather, her actions resulted from impaired judgment and maladaptive coping mechanisms developed in response to severe childhood trauma and emotional neglect. These psychological defenses—such as denial and compartmentalization—are common among trauma survivors and reflect vulnerability, not risk to the public. The report confirms that she has no prior criminal record, has shown genuine remorse, and has taken significant steps toward rehabilitation. Continued incarceration would not address these underlying issues and will not provide the mental health support she needs; only a sentence of time served will allow her to access appropriate treatment, reunite with her son, and continue her path toward recovery and reintegration.

*See* generally, Exhibit C, Psych. Rpt.

### SENTENCING LETTERS PROVIDED IN SUPPORT OF MS. RUBIO ZEA'S CHARACTER

Ms. Rubio Zea's love, attention and devotion to her family and son are also an important factor for the Court to consider in making its sentencing determination. A review of the letters submitted on Ms. Rubio Zea's behalf (discussed briefly above) underscores Ms. Rubio Zea's devotion to her family and provide additional insight into her lifelong upstanding character. Some excerpts: "To you, Honorable Judge, I humbly ask for mercy so that Ana Gabriela may return to the embrace of her family." Letter from Aunt Marilyn Rubio; "My only wish as her aunt is to see her reunited with her baby and to have the opportunity to share in the most important years of her child's life. Becoming a mother truly fulfilled her as a woman." Letter from Aunt Vanessa Zea; "Ana Gabriela grew up lacking love, lacking parent's attention, guidelines, and time." Letter from Cousin Silvia Verónica Sánchez Rubio; "She is a good person who has so much to offer, not only to us as a family, but especially to her son, who needs his mother present in his life." Letter from Estela Esquivel, wife of Herbert Rubio (Ana Gabriela's father); "Give her the opportunity to prove, through steady love and hard work, that she can be the parent and the daughter we know she can be . . . I have always known her as someone who needed protection and, later, became a protector in her own right." Letter from Herbert Rubio (Ana Gabriela's father); ". . . anyone else might have stopped calling a baby who doesn't talk or pay attention, but she keeps fighting to regain the conversations she used to have with her child. … She was the kind of person who might not have money for her own home or food, yet she would still choose to donate some food to people who didn't have a place to live." Letter from

13

Sentencing Memorandum
*United States v. Ana Gabriela Rubio Zea,* 23-Cr-180 (KPF)
January 13, 2026

Juan Fermin Montenegro (father of Ana Gabriela's toddler son, Fermin); "Gabi is an educated, kind, and flexible person, always willing to help others. She has been our Zumba instructor, our English teacher, our translator — in short, she has provided countless forms of support. . . . A mother's love surpasses all the outstanding qualities I have already mentioned. Her desperation to speak with her baby is something we see every day, twice a day." Letter from Blanca Hernández (fellow MDC inmate); "She is a super mom—loving, responsible, and devoted to her child despite her current situation. . . . Gaby is entrepreneurial, visionary, creative, intelligent, and resilient. . . . I plead for mercy and clemency… Her son, my grandson, is growing up confused and has called others 'Mom' in her absence." Letter from Astrid Jovanna Zea de Paz (mother of Ana Gabriela Rubio Zea); "Her role as a mother is being interrupted during the most formative years of her child's life—the first six years are crucial, and a mother's presence is vital." Letter from José Roberto Laguardia Illescas (Ana Gabriela's stepfather); "A chance for Gabriela to be reunited with her son and to return to the family that misses and loves her would mean everything, not as a reward, but as an opportunity for healing, responsibility, and the everyday, patient work of being a mother and a daughter and a sister." Letter from Andrea Rubio (half-sister); and, as a second MDC inmate who has lived alongside her for more than two years wrote, "she told me that repentance begins with telling the whole truth. . . . Thanks to her, I now ██████████████████████████, and I feel my heart is free." Letter from Beley Gómez Murcia.

In addition to the letters from family and friends, the Court has received a letter from Juan Cooper, an investigative journalist with extensive experience covering organized crime and transnational criminal networks in the United States and Latin America. Mr. Cooper has known Ms. Rubio Zea personally and professionally since 2015, and his perspective offers a unique and independent assessment of her character. He describes Ana Gabriela as a driven and capable entrepreneur, skilled in international business and fluent in multiple languages. Beyond her professional accomplishments, Mr. Cooper highlights her sincere commitment to environmental protection, sustainability, and animal welfare—values that have consistently guided her personal and professional life. He notes that Ana's dedication to ecological initiatives and her alignment with Christian values of responsibility, humility, and care for others are not superficial interests, but deeply held convictions that reflect her true character.

Mr. Cooper acknowledges the seriousness of the offense and the devastating impact of

14

Sentencing Memorandum
*United States v. Ana Gabriela Rubio Zea,* 23-Cr-180 (KPF)
January 13, 2026

fentanyl-related crimes, expressing that nothing in his letter is intended to diminish that reality. However, he attests to Ana Gabriela's genuine remorse, reflection, and growth during her nearly three years of incarceration, particularly the profound emotional toll of being separated from her young child. He writes that this experience has clearly changed her, and he believes Ana understands the gravity of her actions and their consequences for herself, her family, and society at large. Importantly, Mr. Cooper states that, based on his long-standing personal knowledge, Ana possesses the capacity for rehabilitation and the commitment to live a lawful, responsible life moving forward. He expresses sincere confidence in her ability to be a devoted mother and a productive, positive member of society. This independent testimony, from someone outside her immediate family, reinforces the view that Ana Gabriela's conduct in this case is an aberration and that she has the potential to contribute meaningfully to her community upon release. *See* generally, Exhibit A – Letters in Support of Ms. Rubio Zea's Character.

### ACCEPTANCE OF RESPONSIBILITY AND REMORSE

Ms. Rubio Zea expressed her deep remorse for her conduct in this case in a letter to the Court, in which she accepts full responsibility for her actions. *See* Exhibit B – Letter to the Court from Ms. Ana Gabriela Rubio Zea. Ana Gabriela Rubio Zea writes with deep remorse, tracing the trauma, losses, and personal transformation that shaped her path and now ground her commitment to rehabilitation. She describes a childhood marked by neglect, sexual abuse, and domestic violence, followed by years of instability, financial hardship, and traumatic losses—experiences that left her vulnerable, fearful, and often isolated, ultimately contributing to lapses in judgment during desperate moments. "I take full responsibility for my actions and I alone am accountable for my crimes." *Id.* Letter from Ana Gabriela Rubio Zea to Hon. Katherine Polk Failla, U.S. Dist. Judge (Jan. 7, 2026) at 3. (*See also* "██████████ Under 3553(a)" below.)

She recounts the profound impact of her incarceration, including violence she endured at MDC, the harsh conditions of confinement, and the irreplaceable loss of time with her young son. She states that these experiences forced her to confront the real consequences of her actions and led to genuine moral and personal transformation.

During her incarceration, she has pursued education, assisted other inmates through translation and support, strengthened her family relationships, and grounded herself in faith. She

Sentencing Memorandum
*United States v. Ana Gabriela Rubio Zea,* 23-Cr-180 (KPF)
January 13, 2026

emphasizes her commitment to rehabilitation and her desire to return home to rebuild her life and be present for her son.

She respectfully asks the Court for compassion and the opportunity to reunite with her family, continue her rehabilitation in the community, and live as a law-abiding, contributing member of society.

*Id.*

### [SECTION REDACTED]

### THE IMPORTANCE OF THE 3553 FACTORS TO THE DETERMINATION OF A JUST SENTENCE

Ms. Rubio Zea's history and background are highlighted in order to move this Court to fashion a sentence that is fair and just. In this case, a sentence below the advisory Guidelines range, one of time served, would better reflect Ms. Rubio Zea's actual conduct, avoid unwarranted disparities with more culpable cartel members, and serve the statutory purposes of deterrence and rehabilitation without perpetuating ineffective punitive approaches. Such a sentence would acknowledge the seriousness of this offense while ensuring proportionality and fairness in light of her limited role.

In Ms. Rubio Zea's case, it is "the nature and circumstances of the offense" as well as "the history and characteristics of the defendant" that justify our requested sentence of time served. 18 U.S.C. §3553(a)(1).

Of the other goals set out in 18 U.S.C. § 3553(a)(2), the Court must also consider the need for the sentence to "reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;" "to afford adequate deterrence to criminal conduct;" "to protect the public from further crimes of the defendant." 18 U.S.C. § 3553(a)(2).

Ms. Rubio Zea understands the need to promote respect for the law and provide just punishment for the offense. She has never minimized the seriousness of this offense, and has always acknowledged her responsibility, in fact pleading guilty to the offense. Ms. Rubio Zea understands that punishment is in order. And she began her atonement well in advance of her acceptance of responsibility and pleading guilty. She is deeply remorseful for her involvement. As to promoting respect for the law and just punishment, a sentence that distinguishes between

Sentencing Memorandum
*United States v. Ana Gabriela Rubio Zea,* 23-Cr-180 (KPF)
January 13, 2026

brokers of precursor chemicals and cartel leaders, sicarios or enforcers, money launderers, and traffickers of finished fentanyl promotes respect for the law by ensuring proportionality. Treating all actors alike undermines fairness.

The instant offense has caused a great deal of self-reflection and self-inflicted punishment, which speaks to a high level of specific deterrence: the shame she is experiencing will have a very high deterring effect on Ms. Rubio Zea. A sentence of time served will likely include a term of supervised release, where her actions will be closely monitored and she must submit to a myriad of strict conditions and obligations restricting her liberty. (See "Sentencing Options for Non-Citizen Defendants" below). Such a sentence is significant and more than adequately reflects the seriousness of the offense. For someone like Ms. Rubio Zea who is a first-time offender, such a sentence reflects the seriousness of the offense and the need to provide just punishment.

Ms. Rubio Zea has not gone without mental suffering this past year. This has caused her no small amount of anguish. *Id.* Consistent with the forensic psychological report's conclusion that her occasional grandiosity reflected a defensive posture rather than true self-inflation, she now acknowledges her wrongdoing and feels genuine shame for her conduct. Additionally, since being extradited to the U.S., Ana Gabriela Rubio Zea has been separated from her three-year-old son, who cannot visit due to a lack of visa. This separation has caused emotional distress for both, highlighting the broader impact of her detention and the need for a sentence that enables family reunification.

Further, by accepting responsibility and pleading guilty, Ms. Rubio Zea is now a convicted felon, a mark that will follow her for the rest of her life. A sentence of time served plus supervised release serves not only to ensure punishment, but will ensure deterrence, both specifically as to Ms. Rubio Zea and generally for anyone contemplating involvement in a similar situation. It would be sufficient, but not greater than necessary, to comply with the factors to be considered in imposing a sentence outlined in 18 U.S.C. §3553(a). The sentence would address the sentencing objectives of punishment and general and specific deterrence. As to protection of the public, Ms. Rubio Zea's conduct did not involve direct distribution of fentanyl in U.S. communities. Incapacitating her as if she were a trafficker of finished fentanyl misaligns with the actual risk she poses.

Ms. Rubio Zea's crime, while serious, combined with her exemplary background—a

Sentencing Memorandum
*United States v. Ana Gabriela Rubio Zea,* 23-Cr-180 (KPF)
January 13, 2026

first-time offender, mother of a young child, who continues to progress and educate herself ▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮--does not support imprisoning her. Although Ms. Rubio Zea undoubtedly made a bad decision in her life by becoming involved in this offense, her actions outside of this offense reflect a pattern of empathy, diligence, and support for her loved ones and community. Given her consistent positive behavior and three years of incarceration without ever seeing her son in those years, it is highly unlikely Ms. Rubio would ever reoffend.

### REHABILITATIVE EFFORTS--COMMITMENT TO PERSONAL GROWTH AND SELF-DEVELOPMENT

Not least of the important sentencing goals for the Court is providing necessary vocational and rehabilitative needs of the offender. 18 U.S.C. §3553(a)(2). Throughout her life, Ms. Rubio Zea has consistently dedicated herself to personal growth and self-development. This enduring commitment is not a recent development or a response to her current circumstances; rather, it is a reflection of her character and values. She has continually sought to improve herself, striving for positive change not only in her own life but also in the lives of her family members. This pattern of self-improvement and positive influence has been a constant, extending well before and throughout the events related to this matter and her period of incarceration. The Court can be assured that Ms. Rubio Zea's dedication to self-betterment will persist moving forward, as it is a fundamental aspect of who she is.

In further demonstration of her dedication to self-improvement, during her incarceration at MDC, Ms. Rubio Zea has completed 32 courses, including the following:

**List of Courses--Certificates of Rehabilitation, Education, and Personal Growth** (*See also* Ex D)

### 1. Educational & SKILL-Building Programs
- High School Equivalency (GED) and Transcript — 9/6/2023
- Business Ethics — 12/4/2024
- Entrepreneurship — 12/4/2024
- Marketing Basics — 12/5/2024
- Financial Awareness — 12/3/2024

### 2. Language Acquisition & Cultural Literacy
- ESL — 11/17/2025
- Introduction to Chinese — 8/28/2025
- Russian — 8/2/2024

18

Sentencing Memorandum
*United States v. Ana Gabriela Rubio Zea,* 23-Cr-180 (KPF)
January 13, 2026

### 3. Columbia University & Higher-Level Academic Programs
- Music in the United States — 5/22/2024
- Plato's *The Republic*: Justice & Happiness — 5/30/2025
- Astronomy — 5/13/2024
- *The Tempest* — 4/29/2025

### 4. Core Rehabilitation & Insight Programs
- Start Now — 3/13/2024
- Trauma in Life Workshop — 6/28/2024
- Understanding Your Feelings: Shame & Low Self-Esteem — 9/27/2023
- Violence Against Women Act (VAWA) — 12/6/2023
- Getting to Know Your Healthy Aging Body — 12/19/2024
- Finally Free: Living in Peace by Releasing Your Past — 4/16/2025

### 5. Mental Health, Emotional Regulation & Wellness
- Stress-Management Course — 6/17–20/2024
- Meditation Program — 9/18/2025
- Weight Management: Making a Decision — 9/8/2025
- Enjoying Life Sentry Class — 6/2/2025
- Diabetes — 8/1/2025

### 6. Parenting & Family Responsibility
- National Parenting Program: Phase One — 7/1/2024
- To Parent or Not to Parent: Phase Two — 4/8/2024

### 7. Vocational & Work-Readiness
- Rec Aide Training — 10/2/2025
- Tutor Certificate — 12/2025

### 8. Physical Fitness, Health & Pro-Social Recreation
- Basic Fitness — 3/11/2024
- Structured Exercise Program — 3/8/2024
- Structured Exercise Program — 4/1/2024
- Yoga Instructor — 9/18/2025

### 9. Creative, Enrichment & Personal Development
- Crochet Sentry Class — 3/18/2024
- Advanced Crochet — 3/5/2025
- Feminism — 12/18/2024
- Origami — 7/11/2024

As is clear from this extensive list of courses taken while incarcerated, Ms. Rubio Zea has used her twenty-nine months at MDC to pursue meaningful change and to build the skills, insight, and stability necessary for a law-abiding future. From the outset of her incarceration, she

Sentencing Memorandum
*United States v. Ana Gabriela Rubio Zea,* 23-Cr-180 (KPF)
January 13, 2026

has sought out programming, education, and therapeutic opportunities, completing a wide range of courses that address both personal development and practical skills. She earned her GED shortly after arriving at MDC in September 2023 and has continued to enroll in academic, vocational, and wellness programs, including philosophy, creative writing, business ethics, entrepreneurship, astronomy, music history, ESL, Chinese language, diabetes education, weight management, yoga and stress-reduction, and multiple parenting and emotional-awareness workshops. She also completed the Resolve Workshop, a core BOP program focused on trauma, accountability, and emotional regulation.

In addition to her formal coursework and certificates, Ms. Rubio Zea has pursued extensive self-education, reading widely throughout her incarceration, as documented in Exhibit E -- List of Books Read. She has also contributed meaningfully to the educational environment at MDC by serving as a tutor in multiple subjects, supporting the learning and well-being of other women in her unit. These efforts—along with her continued participation in creative, vocational, and recreational programming—further demonstrate her sustained commitment to personal growth, rehabilitation, and constructive engagement with those around her.

Her daily conduct and sustained engagement in programming are not simply reflected in her own account; they are independently confirmed by the Bureau of Prisons. As documented in Exhibit F – Letter of Recommendation and Transcript from Correctional Counselor Stephen Espinet, which provides objective, institutional observations of Ms. Rubio Zea's conduct, programming, discipline, and work performance, Ms. Rubio Zea has maintained an exemplary record during her twenty-nine months at MDC, consistently demonstrating discipline, initiative, and a sustained commitment to rehabilitation. Counselor Espinet further notes that Ms. Rubio Zea has served as a unit orderly since August 2023 and volunteers as a tutor in Spanish, English, and Mandarin, consistently demonstrating outstanding work performance with minimal supervision. The attached transcript (to Exhibit F) corroborates this record, documenting her sustained participation in dozens of courses—including academic classes, vocational programs, parenting workshops, emotional-awareness groups, and the Resolve Workshop—as well as her ongoing involvement in rehabilitative programming from 2023 through 2026.[5] Together, these

---

5.    The list does not include many of the courses taken by Ms. Rubio Zea; however, these are all documented in Exhibit D -- Certificates of Achievement.

Sentencing Memorandum
*United States v. Ana Gabriela Rubio Zea,* 23-Cr-180 (KPF)
January 13, 2026

records reflect a clear and consistent commitment to self-improvement and rehabilitation.

These institutional observations are reinforced by the women at MDC who have lived alongside Ms. Rubio Zea for more than two years, each describing the same pattern of maturity, accountability, and constructive engagement. They recount her steady participation in programming, her reliability in daily responsibilities, and the emotional growth they have witnessed as she has confronted the consequences of her conduct and worked to rebuild herself for both her son and herself. Their accounts, offered without any personal stake, consistently reflect a woman who has used her time in custody to change in meaningful and observable ways.

Taken together, these institutional records, program completions, and peer observations reflect a young woman who has used every available opportunity to confront her past, develop new skills, and build the foundation for a stable and law-abiding future. Her conduct over the past nearly three years demonstrates not only compliance, but sustained effort, discipline, and a genuine commitment to rehabilitation—qualities that the Bureau of Prisons, her counselors, and the women who live alongside her have independently observed.

### CURRENT INCARCERATION CONDITIONS

In addition to her rehabilitative efforts, the Court should also consider the conditions under which Ms. Rubio Zea has served her sentence, which have been significantly harsher than those contemplated by the Guidelines.

The conditions at MDC have been widely recognized as among the most restrictive and deficient in the federal system, and Ms. Rubio Zea has experienced these hardships throughout her period of confinement. Against this backdrop, Ms. Rubio Zea has also encountered recurring safety concerns that have compounded the difficulties of her confinement at MDC Brooklyn and that warrant the Court's attention.

According to Ms. Rubio Zea, and as documented in both the PSR and the forensic psychological report, Ms. Rubio Zea has endured difficult living conditions and has feared for her safety while incarcerated at MDC Brooklyn. She reported that a group of inmates regularly harassed her, taunted her, cut her hair, and smeared tuna fish on her belongings. The harassment escalated to the point where she feared a missing pair of scissors might be used to assault her. PSR at ¶ 9.

Sentencing Memorandum
*United States v. Ana Gabriela Rubio Zea,* 23-Cr-180 (KPF)
January 13, 2026

In July 2024, after Ms. Rubio Zea intervened to protect a friend who was being assaulted by this group, she herself was struck on the left side of her head with a closed fist, and one of the assaulting inmates cut a section of her very long hair. As a result, Ms. Rubio Zea suffered mild hearing loss, dizziness, migraines, and was diagnosed with post-concussion syndrome and abrasions, requiring medical attention and spent multiple days in the Special Housing Unit (SHU). PSR ¶¶ 9, 95, Psych Rpt. at 8-9. Importantly, Ms. Rubio Zea did not request, nor did she want to be placed in the SHU, where she was housed for 23 days, as she found its conditions to be especially harsh and distressing.

The SHU at MDC Brooklyn is widely documented as imposing extreme isolation, with inmates confined to their cells for up to 23 hours a day, with minimal human contact, and limited to non-existent access to recreation or programming. These conditions are compounded by chronic overcrowding, frequent violence, unsanitary environments (including mold, vermin, and raw sewage), inadequate medical care, frequent lockdowns, lack of heat and power, and poor food quality. Inmates have described the SHU as "inhumane," "barbaric," and "hell on earth," with severe psychological impacts including anxiety, depression, and exacerbation of trauma. Over the years, "MDC has become synonymous with egregious neglect and abuse with the people incarcerated." U.S. District Judge Jesse Furman has gone as far as citing the conditions at the MDC as an "exceptional" circumstance that allowed him to leave a defendant on house arrest prior to imposing a sentence.[6][7][8] The inmates have suffered for the past three months without hot water for their showers. Ms. Rubio Zea has emailed numerous complaints to MDC Facilities Staff in early and mid-December, complaining about the lack of hot water, however this issue remains unaddressed by MDC.[9]

---

6.  Alex Abraham, Nicolas Maduro Held in Notorious MDC Brooklyn: Inside the US Jail's Troubled History, Gulf News (Jan. 6, 2026), https://gulfnews.com/world/americas/inside-mdc-brooklyn-the-notorious-jail-holding-venezuelas-nicolas-maduro-1.500400276 (last visited Jan. 6, 2026).

7.  Kaja Whitehouse, 'Hell on earth': Inside the Brooklyn jail reportedly housing Nicolás Maduro, Business Insider (Jan. 4, 2026), https://www.businessinsider.com/nicolas-maduro-brooklyn-jail-metropolitan-detention-center-mdc-conditions-2026-1 (last visited Jan. 6, 2026).

8.  Rich Schapiro, Sean Combs' new home—a notorious federal jail—has a 'way of breaking people,' lawyers say, NBC News (Sept. 18, 2024), https://www.nbcnews.com/investigations/sean-combs-new-home-notorious-federal-jail-way-breaking-people-lawyers-rcna171638 (last visited Jan. 6, 2026).

9.  Recent correspondence from Ana Gabriela Rubio Zea to "Facilities Staff Repairs Orderly" (Dec. 3, 17, 2025) (on file with counsel).

Sentencing Memorandum
*United States v. Ana Gabriela Rubio Zea,* 23-Cr-180 (KPF)
January 13, 2026

Most recently, on January 5, 2026, Ms. Rubio Zea emailed undersigned counsel expressing uncertainty about her continued access to her CorrLinks email account, reporting that she may lose access because Cilia Flores, wife of recently ousted Venezuelan president Nicolás Maduro, was being brought into her unit at MDC. This development has caused additional anxiety and concern for Ms. Rubio Zea, who already faces significant challenges in maintaining contact with her family and legal counsel under restrictive conditions.[10] These circumstances underscore the urgent need for the Court to consider the realities of Ms. Rubio Zea's confinement when fashioning an appropriate sentence, as her ability to access support and communicate with counsel may be further compromised.

In light of these ongoing hardships and acute confinement conditions, it is especially important for the Court to consider the sentencing options available for non-citizen defendants facing removal, and to tailor its sentence to reflect both the realities of Ms. Rubio Zea's incarceration and her unique circumstances.

**SENTENCING OPTIONS FOR NON-CITIZEN DEFENDANTS FACING REMOVAL**

To ensure the Court's sentencing determination is both just and practicable, it is necessary to address the unique considerations that arise when a defendant is a non-citizen and faces imminent removal from the United States. In light of Ms.  Rubio Zea's status as a Guatemalan national and the likelihood of deportation following a custodial sentence, the following section outlines the legal authority and practical implications of imposing a sentence of time served and supervised release in such circumstances.

In the case of Ana Gabriela Rubio Zea, a Guatemalan national who is not a United States citizen and is subject to removal proceedings, federal courts may impose a sentence of time served followed by a term of supervised release, even when deportation is likely to occur immediately upon completion of the custodial sentence.[11] The statutory framework under 18 U.S.C. § 3583(d) expressly authorizes courts to impose supervised release on non-citizen defendants, and to tailor conditions to the realities of removal, such as requiring the defendant to remain outside the United States or to report to immigration authorities for deportation.[12] While

---

10.     Recent correspondence from Ana Gabriela Rubio Zea to counsel (Jan. 5, 2026) (on file with counsel).
11.     See 18 U.S.C. § 3583(d); U.S. Courts, Immigration-Related Requirements for Probation and Supervised Release Chapter 3: Immigration-Related Requirements (Probation and Supervised Release Conditions) (last visited January 6, 2026).
12.     *Id*.; see also Leppard Law, Federal Sentencing Considerations for Non-US Citizens,

23

Sentencing Memorandum
*United States v. Ana Gabriela Rubio Zea,* 23-Cr-180 (KPF)
January 13, 2026

supervised release technically remains in effect after deportation, practical supervision is limited

unless the individual re-enters the United States during the term of release, at which point

violation proceedings and additional penalties may be imposed.[13] The imposition of supervised

release in these circumstances serves both as a deterrent to unlawful re-entry and as a mechanism

for further judicial oversight should the defendant return.[14] Accordingly, a sentence of time

served plus supervised release is both legally permissible and routinely imposed in cases

involving non-citizen defendants facing removal.[15]

### AVOIDANCE OF UNWARRANTED SENTENCING DISPARITIES (§ 3553(a)(6))

Section 3553(a)(6) directs the Court to avoid unwarranted disparities among defendants

"with similar records who have been found guilty of similar conduct." The record in this case

demonstrates that Ms. Rubio Zea is not similarly situated to the vast majority of her

co-defendants. The roles and offense conduct of the defendants charged alongside her span the

full hierarchy of the Sinaloa Cartel, including leaders who directed extraordinary violence,

commanders of armed enforcement groups, operators of clandestine fentanyl laboratories,

traffickers responsible for moving massive quantities of fentanyl into the United States, weapons

suppliers, and money launderers who facilitated the movement of drug proceeds.

The following chart summarizes the roles and conduct of each co-defendant, based on the

government's own descriptions:

| Roles and Conduct Comparison of Co-Defendants *(Based on the offense-conduct descriptions provided by the Government in the Indictment and PSR, Government Sentencing Documents, and ECF Information)* | | | |
|---|---|---|---|
| **Defendant** | **Role in Organization** | **Offense Conduct** | **Sentence** |
| Ovídio Guzmán López | Leader: fentanyl manufacturing & trafficking leader | (Youngest son of "El Chapo," Sinaloan Cartel leader); controlled first fentanyl lab | N/A |

---

https://leppardlaw.com/federal/sentencing/federal-sentencing-considerations-for-non-us-citizens (last visited January 6, 2026).

13.    U.S. Courts, *supra* n.13.
14.    *Id.*; Leppard Law, supra n.14.
15.    U.S. Courts, *supra* n.13.

24

Sentencing Memorandum
*United States v. Ana Gabriela Rubio Zea,* 23-Cr-180 (KPF)
January 13, 2026

| Defendant | Role in Organization | Offense Conduct | Sentence |
|---|---|---|---|
| | | (2014); oversaw major fentanyl production, trafficking, and profits | |
| Iván Archivaldo Guzmán Salazar | Leader: Head of security apparatus | (Oldest son of "El Chapo"); ordered and committed kidnappings, murders, violent enforcement | N/A |
| Jesús Alfredo Guzmán Salazar | Leader: security & major trafficker | Shared security command; trafficked fentanyl and precursors | N/A |
| Oscar Noé Medina González | Leader: Principal Deputy--day-to-day commander of security | Oversaw regional commanders; dispatched armed groups for assassinations, intimidation, territorial control, attacks on law enforcement | N/A |
| Néstor Isidro Pérez Salas | Security leader; "Los Ninis" commander | Responsible for Sinaloa state security; coordinated fentanyl manufacturing and trafficking | N/A |
| Jorge Humberto Figueroa Benítez | Security leader; "Los Ninis" commander | Oversaw Pérez Salas' security; coordinated fentanyl manufacturing and trafficking | N/A |
| Liborio Núñez Aguirre | Fentanyl trafficker | Moved large quantities of fentanyl into the U.S. | N/A |
| Noel Pérez López | Fentanyl trafficker | Same as above | N/A |
| Samuel León Alvarado | Fentanyl trafficker | Same as above | N/A |
| Luis Javier Benítez Espinoza | Fentanyl trafficker | Same as above | N/A |
| Alan Gabriel Núñez Herrera | Fentanyl trafficker | Same as above | N/A |
| Juan Pablo Lozano | Weapons supplier & trafficker | Distributed fentanyl in U.S.; transported firearms and explosives into Mexico | N/A |
| Carlos Limón | Fentanyl lab operator | Operated clandestine labs converting precursors into fentanyl | N/A |
| Jesús Tirado Andrade | Fentanyl lab operator | Same as above | N/A |

Sentencing Memorandum
*United States v. Ana Gabriela Rubio Zea,* 23-Cr-180 (KPF)
January 13, 2026

| Defendant | Role in Organization | Offense Conduct | Sentence |
|---|---|---|---|
| Carlos Omar Félix Gutiérrez | Fentanyl lab operator | Same as above | N/A |
| Silvano Francisco Mariano | Fentanyl lab operator | Same as above | N/A |
| Julio Marín González | Money launderer | Moved fentanyl proceeds via cash, wires, trade, crypto | N/A |
| Mario Alberto Jiménez Castro | Money launderer | Same as above | N/A |
| Sergio Duarte Frías | Money launderer and fentanyl importer | Same as above; also "[r]epatriated a total of approximately $869,000 U.S. dollars in narcotics proceeds using cryptocurrency" with partner Jimenez Castro; personally distributed over 10,000 Sinaloa Cartel fentanyl pills to an undercover ("UC") and one kilogram of fentanyl in exchange for payment in automatic weapons, including AK47s and AR15s; agreed with UC to sell another 10 kilograms fentanyl powder at $14,000 per kilogram and destined for NYC; described as among the "least culpable" of the defendants. PSR recommendation: 108 months.<br><br>Gov't Sentencing Memorandum, United States v. Duarte, No. 23-cr-180 (KPF), ECF No. 270, at 2, 4–5. *See also* PSR (Rubio Zea) at ¶ 48. | Concurrent terms of eighty (80) months imprisonment on Counts Two and Six. Supervised release: aggregate terms of four (4) years concurrent to Count Two, and three (3) years on Count Six.<br><br>Judgment, United States v. Duarte, No. 23-cr-180 (KPF), ECF No. 274, at 3, 4. |
| **Ana Gabriela Rubio Zea** | *Broker of precursor chemicals* | *Connected individuals with Chinese suppliers; facilitated procurement of precursors* | *Pending: Jan 27, 2026* |
| Kun Jiang | Chinese precursor supplier | Manufactured and shipped precursors to Mexico | N/A |
| Yonghao Wu | Chinese precursor supplier | Same as above | N/A |

26

Sentencing Memorandum
*United States v. Ana Gabriela Rubio Zea,* 23-Cr-180 (KPF)
January 13, 2026

| Defendant | Role in Organization | Offense Conduct | Sentence |
|---|---|---|---|
| Yaqin Wu | Chinese precursor supplier | Same as above | N/A |
| Huatao Yao | Chinese precursor supplier | Same as above | N/A |

**Discussion**

This comparison makes clear that Ms. Rubio Zea's conduct is fundamentally different in nature, scope, and culpability. Many of her co-defendants, such as Sergio Duarte, sentenced by this Court to 80 months, occupied positions of extraordinary power, violence, and operational control within the Sinaloa Cartel. Sergio Duarte, for example, not only acted as a major supplier—facilitating large-scale trafficking—but also directly distributed and sold fentanyl to an undercover agent in exchange for weapons. While other co-defendants exercised authority, directed *sicarios*—the cartel's armed enforcers who carried out killings and other acts of extreme violence—ordered kidnappings and murders, operated fentanyl laboratories, trafficked large quantities of fentanyl (such as Duarte), supplied weapons and explosives, or laundered millions of dollars in drug proceeds (again Duarte), Ms. Rubio Zea did none of those things. She held no position within the cartel's hierarchy, exercised no authority over anyone, and engaged in no violence. Moreover, and unlike Duarte, Ms. Rubio Zea ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓ Equally important, there is no allegation—in the indictment, the PSR, or any government submission—that Ms. Rubio Zea knew, communicated with, or had any personal connection to the violent actors, commanders, traffickers, laboratory operators, or money launderers charged alongside her. Although she met with an undercover agent, that interaction only underscores the limited nature of her role: she communicated with someone she believed to be a supplier, not with any of the cartel's leaders, *sicarios*, traffickers, laboratory operators, or financial operatives. Her conduct was confined to facilitating introductions between others, not participating in the cartel's violent or operational machinery.

These distinctions matter for purposes of § 3553(a)(6). Treating a peripheral, non-violent participant as though she were similarly situated to killers, cartel leaders, traffickers, lab operators, or major suppliers and distributors such as Sergio Duarte would create the very disparity the statute instructs courts to avoid. A proportionate sentence must reflect the reality

Sentencing Memorandum
*United States v. Ana Gabriela Rubio Zea,* 23-Cr-180 (KPF)
January 13, 2026

that Ms. Rubio Zea's involvement bears no resemblance to the entrenched criminality and operational control exhibited by the cartel figures charged alongside her.

A sentence that accounts for her limited role, lack of violence, absence of criminal history, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ complex psychological profile shaped by severe childhood trauma, emotional neglect and prolonged abuse, and demonstrated capacity for rehabilitation would not only be just—it would be consistent with the principle that similarly situated defendants should be treated alike, and that those who are not similarly situated should not be treated as though they were.

In light of these facts, a sentence that genuinely reflects Ms. Rubio Zea's limited, non-violent involvement, her lack of criminal history, and her demonstrated commitment to rehabilitation is not only just—it is necessary to honor the principles of proportionality and fairness under § 3553(a)(6). Treating her as though she were a cartel leader, violent actor, or major trafficker would not only distort the statutory mandate, but also undermine the integrity of individualized sentencing. Justice in this case requires that her punishment be tailored to her actual conduct, personal circumstances, and capacity for change—not the actions or culpability of others.

## CONCLUSION

In this post-*Booker*[16] era, where sentencing guidelines are advisory, the Court's responsibility is to conduct a nuanced, individualized assessment. Here, the record demonstrates that Ms. Rubio Zea played a limited, non-violent role, has no criminal history, and possesses a significant capacity for rehabilitation. Importantly, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮ further distinguishing her from other defendants and demonstrating her willingness to accept responsibility and contribute positively to the administration of justice. The impact of sentencing extends beyond the defendant to her young son and family, underscoring the need for a proportionate and just outcome.

Section 3553 requires consideration not only the offense, but also the totality of Ms. Rubio Zea's life circumstances and strengths. Her conduct did not involve violence, operational control, or leadership within the cartel, and there is no evidence she participated in or was connected to the organization's most culpable actors. The consequences of her incarceration—

---

16.    *United States v. Booker,* 543 U.S. 220 (2005).

28

Sentencing Memorandum
*United States v. Ana Gabriela Rubio Zea,* 23-Cr-180 (KPF)
January 13, 2026

including a prolonged and involuntary separation from her three-year-old son, who remains abroad and unable to visit—have imposed a profound emotional toll on both mother and child, magnifying the collateral consequences of detention in ways that cannot be measured by the length of her sentence alone.

A sentence of time served plus supervised release would honor the principle that accountability and mercy can coexist, and that rehabilitation is not only possible, but already underway. This approach furthers the goals of § 3553(a) by allowing her to continue her positive contributions and care for her son.

As the Supreme Court recognized in *Gall* and *Koon*, [17] sentencing must reflect the individuality and complexity of each defendant. Ms. Rubio Zea's history is defined not only by her roles as a daughter, sister, and mother, but also by her resilience, generosity, ███████ capacity for growth and change—qualities that strongly mitigate her conduct and support the requested sentence.

For these reasons, we respectfully ask the Court to exercise its discretion and impose a sentence of time served.

January 13, 2026
New York, New York

RESPECTFULLY SUBMITTED,

*s/ Judith Vargas*

Judith Vargas, Esq.
The Law Offices of Judith Vargas
20 Vesey Street, Suite 400
New York, NY 10007
Cell: (917) 270-5313
Tel: (212) 668-0024
Fax: (212) 668-0060
Email: judithvargas1@aol.com

cc:   Assistant U.S. Attorneys:
      David Robles
      Sarah L. Kushner
      Alexander N. Li
      Kyle A. Wirshba
      Nicholas S. Bradley

---

17.   *Koon v. United States,* 518 U.S. 81, at 113 (1996).

Sentencing Memorandum
*United States v. Ana Gabriela Rubio Zea,* 23-Cr-180 (KPF)
January 13, 2026

    Jane Chong